RAYMOND C. PATRY & another *vs.* HARMONY HOMES, INC., & others.[1]

Hampden. February 15, 1980. — June 4, 1980.

Present: HALE, C.J., GRANT, & NOLAN, JJ.

*Consumer Protection Act. Practice, Civil,* Consumer protection case.

In response to a demand by the purchasers of a mobile home, pursuant to G. L. c. 93A, § 9, for rescission of the purchase contract and return of "the deposit and all monies paid to date", the sellers' offer in settlement to sell the mobile home and to return "the purchase price which was paid out of the proceeds of such a sale" was indefinite and, in the circumstances, was insufficient under c. 93A, § 9(3), to limit the purchaser's recovery. [5-7]

General Laws c. 255, § 13I(*d*), applies only to an action for a deficiency after repossession and sale and, therefore, was not applicable to a counterclaim in an action brought prior to repossession. [7-8]

CIVIL ACTION commenced in the Housing Court of the County of Hampden on October 8, 1976.

The case was heard by *Peck,* J.

*Richard J. Ianello* for the plaintiffs.

*William L. Cohn* for Harmony Homes, Inc., & another.

*Raymond R. Randall* for Vanguard Savings Bank.

HALE, C.J. The plaintiffs appeal from a judgment for the defendants entered in a Housing Court in their action

---

[1] Liberty Mobilehome Sales, Inc., Vanguard Savings Bank and Rex Levesque.

under G. L. c. 93A, and from a judgment awarding $13,625.84 to Vanguard Savings Bank (Vanguard) on its counterclaim.

The judge found, among other things, that Harmony Homes, Inc. (Harmony), was engaged in selling mobile homes and that Liberty Mobilehome Sales, Inc. (Liberty), operated Harmony Homes Village, a mobile home park in Chicopee. Harmony maintained a sales office and lot at the park. Only homes purchased from Harmony could be used at the park. Liberty operated the park itself. The corporations had their main offices in the same building in Connecticut and were owned and managed in common by the same group of people.

On July 16, 1974, Liberty sent a letter to the Chicopee board of health seeking permission to expand its rental operation to land that it had acquired adjacent to the park, and requesting permission to proceed with the attendant construction. Permission to proceed with new construction was granted on August 8, 1974. On August 18, 1975, Liberty submitted an application to extend its park to the new area, without waiving its rights under the board's August 8, 1974, action. The board rejected Liberty's second application in early January, 1976.

Harmony and Liberty did substantial business between August 18, 1975, and January, 1976. To avoid losing mobile home sales and lot rentals, the Harmony sales staff were instructed to allay any concern that their prospects might show because of the pending permit application.

The plaintiffs visited the sales office on August 27, 1975, to look at mobile homes. With the help of a Harmony salesman, one Johnson, they selected a new mobile home. After being shown a map of the park, they chose lot 182 in the expansion area and had their names written on the map across the space for lot 182. They deposited $20. The plaintiffs returned on August 30, 1975, paid an additional $1,080, on the mobile home, and signed a sales agreement for the home. Johnson promised that their home would be fully installed by November 1, 1975. On September 8 they called

at the sales office again and filled out a credit application for a $12,000 loan for their mobile home. Harmony forwarded the application to Vanguard.

On October 15 the plaintiffs met Johnson and one Rourke[2] at the sales office to complete their purchase and lease. They paid an additional $2,898 for the home and $168 for various expenses, which included utility and permit fees and the first month's rent on the lot. Johnson then drove them to Vanguard, where one Levesque, a loan officer, issued checks on two loans totaling $12,000, which the plaintiffs endorsed over to Harmony.

Despite their frequent visits to the park, it was not until a few days before November 1 that the plaintiffs were told that the board had not yet granted a permit to use the expansion area. On the several occasions when they had shown themselves to be curious about the lack of construction in the expansion area, the plaintiffs had been assured that their home would be installed by November 1.

After they were told about the status of the permit, Johnson showed the plaintiffs a substitute lot in a nearby park. The plaintiffs rejected the lot as too small for their mobile home and as being a generally unappealing place in which to live. Early in 1976 they were shown a second lot in Harmony Homes Village, which the plaintiffs found acceptable. It, however, already had a home on it; the plaintiffs were told that the home would be removed when its occupants were evicted. The lot became vacant in August, 1976.

The plaintiffs did not try to relocate or sell their mobile home. From December, 1975, through March, 1976, Harmony paid the plaintiffs' apartment rent. In March, 1976, the plaintiffs stopped paying on their loans from Vanguard, despite Levesque's warning that their problems at the park did not affect their obligations to the bank.

On May 19, 1976, the plaintiffs' attorney sent a letter to each of the five named defendants, pursuant to G. L.

---

[2] Rourke was originally named a defendant, but the case against him was dismissed at trial.

c. 93A, § 9, which set out that the plaintiffs had purchased a 1975 "Burlington" mobile home from Harmony for a total amount of $15,998, which included "sales tax and documentary fees." (The judge found that the plaintiffs gave $3,998 in cash payments and $12,000 through the loan arranged by Rourke, Harmony's and Liberty's agent.) It also stated the closing fees paid by the plaintiffs. The letter detailed the arrangements made with Harmony and Liberty with respect to the placement of the mobile home on lot 182 and Harmony's and Liberty's unkept promises with respect to that lot. The letter also asserted, "To date [May 19, 1976] the buyers have expended a great deal of time and money and up to April 1, 1976 had made their monthly mortgage payments to the bank faithfully, notwithstanding the fact that there was no more space in the mobile home park where their mobile home could be installed and therefore, as a practical matter, found that they had purchased no more than a very expensive, unhabitable, useless and wasting asset." The letter concluded by demanding: "1. That the deposit and all monies paid to date be returned" and "2. That damages in the amount of $5,000 be paid for the buyers' great inconvenience, expense and emotional distress." Liberty, Harmony, and Rourke responded by their attorneys on May 28 with identical offers of settlement which stated, "My client is willing to sell the mobile home of the buyers and to return to them the purchase price which was paid out of the proceeds of such a sale. If you will contact me, I will make arrangements for you to have your clients execute the appropriate papers for the listing." The plaintiffs were not informed of the offers by their attorney.[3] No other significant event occurred until the trial, except that the mobile home was severely damaged by vandals and then taken into the bank's possession on May 19, 1978.

---

[3] The plaintiffs filed motions for a new trial and to amend the findings and judgment. Attached to an affidavit accompanying the motions were copies of four letters between the parties' attorneys concerning the defendants' settlement offer. In the affidavit, the plaintiffs' attorney stated that he had "misplaced" the letters. The motions were denied. As the propriety of that action has not been raised in the appeal, the letters are not part of the record before us.

The judge found that it was an unfair and deceptive act for Harmony and Liberty to have sold the mobile home without having certain knowledge that it had a permit to use the home's intended lot.[4] Although the judge ruled that the situation called for rescission, he allowed no recovery on the ground that the actions of the plaintiffs and their attorney had rendered rescission impossible.[5] The judge found that Vanguard and Levesque had not been involved in any unfair or deceptive act. Judgment was entered on Vanguard's counterclaim in the amount due on the plaintiffs' notes and for Vanguard's attorneys' fees and expenses.

1. We address first the plaintiffs' claim that the trial judge erred in finding that the settlement offer made by Harmony and Liberty was reasonable and therefore sufficient under G. L. c. 93A, § 9(3), to limit the plaintiffs' recovery. They argue that the offer was so vague that Harmony and Liberty failed to sustain their respective burdens of proving the reasonableness of the tendered relief, citing *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704-705 (1975), and *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 799 (1976). They also assert that Harmony and Liberty "should have offered to refund the purchase price together with any out-of-the-pocket monies and expenses incurred as a result of the unfair and deceptive practices committed by Harmony and Liberty."

---

[4] Harmony and Liberty argue in their brief that the evidence was insufficient for the judge to find that Liberty was involved in the sale or that either corporation used unfair or deceptive acts or practices with respect to the plaintiffs. Those issues are not before us, as neither Harmony nor Liberty appealed. See *Kardas* v. *Selectmen of Dedham*, 8 Mass. App. Ct. 184, 187 n.7 (1979). We note, however, that the court specifically found that the defendants acted together in effecting the sale. There is evidentiary support for that finding in the record.

[5] The judge noted that the plaintiffs' attorney had vigorously represented the occupants of the substitute lot which would have been acceptable to the plaintiffs in resisting the eviction proceedings in the Housing Court and had succeeded in preventing that lot from becoming available until August, 1976, by which time the plaintiffs were no longer interested, having commenced this action.

The judge found that while Harmony's and Liberty's responses to the plaintiffs' demands admitted of more than one interpretation, the defendants' offers "at least addressed . . . the main . . . thrust of the plaintiffs' demand, that of rescission," and that the offers were reasonable.[6] The judge proceeded to dispose of the case on that basis. We concur in the judge's construction of the plaintiffs' demand as one for rescission of the whole transaction.

Whether an offer is reasonable is normally a question of fact, *Kohl* v. *Silver Lake Motors, Inc., supra* at 799, which must be determined in light of the terms of the demand and all the attendant facts and circumstances. In the case before us, the judge's findings as to the reasonableness of the offer appear to have been based solely on his interpretation of the wording of the offer. We have the demand, the offer, and the judge's findings before us, and we are in the same position as he to determine whether the offer was reasonable. *Tucci* v. *DiGregorio,* 358 Mass. 493, 494 (1970).

We construe the settlement tendered as an essentially bare offer to sell the mobile home for the account of the plaintiffs. The offer to return "the purchase price which was paid out of the proceeds of such a sale" indicates to us that the amount offered by the defendants was intended to be limited to the return of so much of the purchase price as might be realized upon a resale of the mobile home.[7] Such an offer is too indefinite as to the minimum recovery to be regarded as reasonable. We do not suggest that an offer must be made in a specific dollar amount to be reasonable,

---

[6] The effect of the judge's finding was to limit the amount of the plaintiffs' recovery to the relief tendered and to preclude an award of double or treble damages or for attorneys' fees and costs incurred after the rejection of the reasonable offer. G. L. c. 93A, §§ 3, 4. That the particular relief demanded is unavailable does not necessarily mean that no recovery can be allowed. See, e.g., *Levy* v. *Bendetson,* 6 Mass. App. Ct. 558 (1978).

[7] We decline to accept Harmony's and Liberty's invitation to "take judicial notice of the fact that prices were rising in 1975 and 1976," from which they argue that "it is more likely than not that the plaintiffs would have received more for their mobile home in 1976 than the price they paid for it in 1975."

but it should be in a form that would allow its value to be ascertained. Compare the offer in *Kohl* v. *Silver Lake Motors, Inc., supra* at 798 n.3.

The plaintiffs demanded complete rescission, which would have required Harmony and Liberty to return all the payments made by the plaintiffs on their mobile home and lot, to reimburse them for the amounts paid on the loans to the bank, and to relieve the plaintiffs of their obligations to the bank. All that Harmony and Liberty offered was to act as the plaintiffs' agent to resell the mobile home. The offer failed to meet any of the aspects of the demand letter, the factual assertions of which are supported in all material respects by the judge's findings.[8] The judge found that the mortgage payments referred to in the demand letter totaled $669.64.[9] Harmony and Liberty were well aware of all the deposits and payments made by the plaintiffs. Not only was the offer indefinite, it completely ignored the demand letter's call for the return of all deposits and payments. Moreover, the offer appears to have been made without regard to any of the attendant circumstances. The burden of proving the reasonableness of the settlement tendered was on Harmony and Liberty. *Kohl* v. *Silver Lake Motors, Inc., supra* at 799. They have failed to meet their burden of proof.

2. In his October 18, 1978, findings of fact and conclusions of law the judge found that the plaintiffs owed Vanguard $13,625.84, plus attorney's fees, and gave Vanguard a judgment on its counterclaim against the plaintiffs for that sum. This judgment was amended on November 14, 1978, to add $2,772.50 in attorney's fees and $32.25 in expenses. According to a Vanguard affidavit dated November 8, 1978, the bank sold the mobile home on October 23, 1978,

---

[8] The judge was correct in ruling that the defendants were entitled to ignore part 2 of the demand as it did not state a claim for damages recoverable under G. L. c. 93A.

[9] There was evidence before the judge of other payments which were made (see note 11, *infra*) as to which he made no findings.

for $4,000. The plaintiffs have appealed only from the original judgment on the counterclaim.

The plaintiffs claim that the judge erred in awarding damages to Vanguard on its counterclaim after Vanguard had repossessed the mobile home. The plaintiffs base their claim solely on the contention that "the court has not followed the meaning and intent of G. L. c. 255, § 13I(*d*), in awarding damages after Vanguard's repossession." At the time this action was instituted (October 8, 1976) and at the time Vanguard's counterclaim was filed (November 12, 1976) no repossession had taken place; the bank did not take possession until May 19, 1977. Contrary to the plaintiffs' contention, the counterclaim was not for a deficiency following a sale of collateral, but for the amounts due on the notes which the plaintiffs had given Vanguard, which is one of the cumulative remedies available under G. L. c. 106, § 9-501, as amended by St. 1959, c. 580, § 13. General Laws c. 255, § 13I(*d*), applies only to an action for a deficiency after repossession and sale, and therefore does not apply to the present action. The plaintiffs have failed to show that the judge erred.[10]

The judgment on the complaint is reversed as to the defendants Harmony and Liberty and affirmed as to the defendants Vanguard and Levesque. The judgment on Vanguard's amended counterclaim is affirmed. The case is remanded to the Housing Court for a determination of the plaintiffs' damages and reasonable counsel fees, and for

---

[10] We note that Vanguard's affidavit in support of its motion for attorney's fees recites the circumstances of the sale of the mobile home and the amount realized. In ordering the amendment of the judgment to include counsel fees, the judge acknowledged the affidavit and wrote, "No hearing having been had on the question, the question of the repossession sale as reasonably commercial is not before the court and is not being passed on in this proceeding." The amount of credit due the plaintiffs on account of the sale remains an open question. Vanguard recognizes this in its brief, which states, "The plaintiffs are the persons who will ultimately benefit from the repossession and sale since any monies received must be credited against plaintiffs' liability."

such other relief under G. L. c. 93A, § 9(3)(4), as the court deems necessary and proper.[11]

*So ordered.*

---

[11] In fashioning its judgment, the court should take into account all payments made by the plaintiffs to Harmony and Liberty, the insurance premium paid to the Ross Insurance Agency, and the four payments made to Vanguard on each of the plaintiffs' two loan accounts. The court may double or treble the damages should it make the necessary findings to do so under § 9(3). The court may also, in the exercise of its equitable powers, order Harmony and Liberty to satisfy the Vanguard judgment (less a credit for the sale of the mobile home, see note 10, *supra*) and to deduct the amount of that judgment from the damages awarded to the plaintiffs.