RAYMOND C. PATRY & another[1] vs. LIBERTY MOBILHOME
SALES, INC.

Hampden.    February 18, 1983. — April 27, 1983.

Present: GREANEY, KASS, & WARNER, JJ.

*Judge. Jurisdiction,* Housing Court, Consumer protection case. *Housing Court,* Jurisdiction. *Consumer Protection Act,* Damages, Attorney's fees. *Damages,* Attorney's fees, Consumer protection case.

Although a Superior Court judge may not have been assigned to sit in the Housing Court in Hampden County in accordance with G. L. c. 211B, § 9, he did not thereby lack authority to hear a case commenced in the Housing Court in Hampden County which continued to be carried on the docket of that court and in which judgment was entered in that court.  [702-704]

A controversy involving the sale of a mobile home and the lease of a mobile home lot was within the jurisdiction of the Housing Court.  [704-705]

In an action for violations of G. L. c. 93A, § 2, involving the sale of a mobile home and the lease of a mobile home lot, the judge did not abuse his discretion in awarding triple damages upon concluding that the defendant had wilfully and knowingly violated c. 93A, § 2, and that the defendant's settlement offer was made in bad faith.  [705-706]

The judge in a consumer protection case was not required to subtract from the award of legal fees an amount to penalize the plaintiffs' attorney for accepting multiple employment which might have involved a conflict of interest, where neither of the attorney's clients was actually prejudiced as a result.  [706-707]

CIVIL ACTION commenced in the Housing Court of the county of Hampden on October 8, 1976.

Following the decision of this court reported sub nom. *Patry* v. *Harmony Homes, Inc.,* 10 Mass. App. Ct. 1 (1980), the case was heard by *Moriarty,* J.

*William L. Cohn* for the defendant.
*Richard J. Ianello* for the plaintiffs.

[1] Rachel M. Cloutier.

KASS, J. In *Patry* v. *Harmony Homes, Inc.*, 10 Mass. App. Ct. 1 (1980) (*Patry I*), an earlier manifestation of this dispute, we decided that Harmony Homes, Inc. (Harmony), and Liberty Mobilhome Sales, Inc. (Liberty), which were related corporations, had not made a reasonable offer of settlement under G. L. c. 93A, § 9(3), *Patry I, supra* at 5-6, and remanded the case to the Housing Court in Hampden County for a determination of the plaintiffs' damages and reasonable counsel fees, and for such other relief under G. L. c. 93A, § 9(3) & (4), as that court might deem necessary and proper.[2]

At the end of the second proceeding (*Patry II*) in the trial court, judgment entered for the plaintiffs in the amount of $14,164.92 on account of damages (together with interest), $10,000 in attorney's fees, and costs, including specially assessed costs of $1,948.58. The defendant Liberty once again has appealed and first raises two procedural issues.

1. *The authority of the judge to sit on the case.*

There is only one judge of the Hampden Housing Court,[3] and, on motion of the plaintiffs, he recused himself from sitting in the further proceedings ordered by the remand. A judge of the Superior Court heard *Patry II*, but the case retained its identity as a Housing Court case, i.e., it continued to be carried on the Housing Court docket, motions and other papers in the case bore the docket number in the Hampden Housing Court and, above all, judgment was entered in the Hampden Housing Court. Indeed, it could not have been otherwise because under G. L. c. 185C, § 20, inserted by St. 1978, c. 478, § 92, "no civil action originally entered in the housing court department shall be transferred to any other department." Although the judgment recites that "the case was transferred to Superior Court Department of the Trial Court," that language appears to signify no more than that the matter was physically transferred for

---

[2] Other questions, relating to another party, were decided in *Patry I* but are not pertinent to this second round.

[3] General Laws c. 185C, § 8, inserted by St. 1978, c. 478, § 92.

hearing before a Superior Court judge, but it continued to be a Housing Court matter, as we have observed.

Liberty's objection, made for the first time on appeal, is that the Superior Court judge was not, conformably with G. L. c. 211B, § 9, inserted by St. 1978, c. 478, § 110, assigned to sit in the Hampden Housing Court.[4] Hence, Liberty asks us to conclude that the judge who sat on the case lacked authority. Such a conclusion would advance neither the cause of "speedy dispatch of judicial business," referred to in G. L. c. 211B, § 9, or the notion of a unitary trial court explicit in St. 1978, c. 478, § 110 (the Court Reorganization Act). The power of the Chief Administrative Justice of the Trial Court to assign a judge appointed in one department of the Trial Court to sit in another department is express in the statute. If there has been a failure to make the necessary assignment under G. L. c. 211B, § 9 (the record is unrevealing on this score), it is open to the Chief Administrative Justice, in circumstances such as these where no party objected to the status of the judge sitting, to confirm the assignment under G. L. c. 211B, § 9, nunc pro tunc. Cf. *Konstantopoulos* v. *Whatley,* 384 Mass. 123, 129-130 (1981); *Foster* v. *Evans,* 384 Mass. 687, 689 n.3 (1981). Attacks on the authority of a judge "recognized by the public as having been acquired under the forms of law and . . . apparently valid" have not found favor except in those rare cases when a judge appears to have usurped the office or acted in violation of an express statutory prohibition. *Commonwealth* v. *DiStasio,* 297 Mass. 347, 352, cert. denied, 302 U.S. 683, 759 (1937). "[W]here there is an office to be filled and one acting under color of authority fills the office and discharges its duties, his actions are those of

---

[4] The second paragraph of G. L. c. 211B, § 9, provides: "The chief administrative justice may assign a justice appointed to any department of the trial court to sit in any other department of the court, for such period or periods of time as he deems will best promote the speedy dispatch of judicial business . . . ." The procedures by, and conditions under, which the Chief Administrative Justice may make assignments among courts are then spelled out.

an officer *de facto* and binding upon the public." *Mc-Dowell* v. *United States*, 159 U.S. 596, 602 (1895). That rule, the court observed in *Glidden Co.* v. *Zdanok*, 370 U.S. 530, 535 (1962), has its support in a policy of "preventing litigants from abiding the outcome of a lawsuit" and, if disappointed, attacking the credentials of the tribunal. See also *Crocker* v. *Sears, Roebuck & Co.*, 346 So.2d 921, 922-923 (Miss. 1977). Different principles may be called for, although we do not so decide, in cases where an infirmity is the basis for a challenge at the inception of a proceeding. See *United States* v. *American-Foreign S.S. Corp.*, 363 U.S. 685 (1960), in which the capacity of a judge to participate in an en banc sitting of an appellate court was raised at the earliest practicable time. Defective authority may also be raised in behalf of the public, *Frad* v. *Kelly*, 302 U.S. 312 (1937); *Glidden Co.* v. *Zdanok*, 370 U.S. at 535, as distinguished from a private litigant.

2. *Subject matter jurisdiction of the Housing Court.*

On this appeal after the second trial, the defendant Liberty challenges for the first time the jurisdiction of the Housing Court to consider a dispute involving the sale of a mobile home and the lease of a mobile home lot. Jurisdictional questions, of course, remain open at any stage of the proceedings, even though not raised below. *Boston* v. *Massachusetts Port Authy.*, 364 Mass. 639, 645 (1974). It would be the duty of an appellate court to consider a jurisdictional question on its own motion, were it the first to identify it. *Goes* v. *Feldman*, 8 Mass. App. Ct. 84, 85 (1979).

Prior to the enactment of St. 1979, c. 72, § 3, the Housing Court lacked subject matter jurisdiction over c. 93A cases, a limitation which the 1979 legislation remedied. The act did not, however, confer general c. 93A jurisdiction upon the Housing Court. That court cannot, for example, hear a c. 93A claim arising out of the sale of a used car. A c. 93A claim may come before the Housing Court only insofar as it "is concerned *directly or indirectly* with the health, safety, or welfare of any occupant of any place used, or intended

for use, as a place of human habitation *and the possession, condition, or use of any particular housing accommodations.*" G. L. c. 185C, § 3, inserted by St. 1979, c. 72, § 3 (emphasis supplied).

None of the words appearing in italics in the statutory material just quoted appeared in St. 1978, c. 478, § 92, which inserted c. 185C in the General Laws. It follows, therefore, that in addition to conferring c. 93A jurisdiction on the Housing Court, the Legislature also provided for a more expansive description of housing-related subject matter than that which guided the court in *Chakrabarti* v. *Marco S. Marinello Associates,* 377 Mass. 419 (1979), and *Haas* v. *Breton,* 377 Mass. 591 (1979). This view is buttressed by the further addition to G. L. c. 185C, § 3, by the same 1979 remedial legislation, of the following: "The [housing court] shall also have jurisdiction of all housing problems, including all contract and tort actions which affect the health, safety and welfare of the occupants or owners thereof, arising within and affecting residents in . . . Hampden county . . . ." That St. 1979, c. 72, was remedial and reactive to the *Chakrabarti* and *Haas* decisions was discussed in *Goes* v. *Feldman,* 8 Mass. App. Ct. at 87.

In the case before us the dispute dealt with a mobile home intended as the habitation of the plaintiffs and with the leasing of a lot for that habitation. It has to do with the condition and availability for use of that particular housing accommodation. As such, the controversy falls within the expanded jurisdiction conferred by St. 1979, c. 72. Nothing in *Goes* v. *Feldman,* 8 Mass. App. Ct. at 91, is to the contrary.

3. *The merits.*

Not much needs to be said about the merits. The trial judge computed the plaintiffs' damages to be $4,721.64, and Liberty does not dispute that finding. Thereupon the trial judge traced in detail the history of the transaction and concluded that Liberty had wilfully and knowingly violated c. 93A, § 2, by deliberately concealing from the plaintiffs that the lot which they leased, and on which they proposed

to install their mobile home, had not been approved for that purpose by the building commissioner (as to zoning) and by the board of health and that Liberty was experiencing difficulty in obtaining the necessary approvals.[5] He also determined that the defendants' refusal to give the plaintiffs their money back, i.e., their various deposits, insurance payments, and loan payments, was "in bad faith with knowledge or reason to know that the act or practice complained of violated said section two." G. L. c. 93A, § 9(3), inserted by St. 1969, c. 690. See *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 627-628 (1978). See also *Linthicum* v. *Archambault*, 379 Mass. 381, 388 (1979). The judge determined that Liberty's settlement offer was made in bad faith because it was illusory: Liberty's best proposal was an offer to attempt to sell the mobile home as agent of the plaintiffs. In the absence of lots on which to install the mobile home, the market for mobile homes, as the judge observed, was "at best a very limited market." See *Heller* v. *Silverbranch Constr. Corp.*, *supra* at 627-628. Liberty, the judge noted, had not been prepared even to contribute to the mitigation of the plaintiffs' damages the profit realized by Liberty on the sale of the mobile home. We have reviewed the record, and it supports the judge's findings. His decision to assess triple damages in accordance with G. L. c. 93A, § 9(3), in view of conduct by Liberty which he characterized as callous, was within his discretion. *Heller* v. *Silverbranch Constr. Corp.*, *supra* at 627. Liberty's attempt to disassociate itself from Harmony Homes, Inc., is substantially foreclosed by *Patry I*, 10 Mass. App. Ct. at 5 n.4, and by the record. See also *My Bread Baking Co.* v. *Cumberland Farms, Inc.*, 353 Mass. 614, 619-620 (1968).

In assessing legal fees the judge touched on the appropriate criteria of time spent, the skill required, the skill with which the services were discharged, and the results achieved. *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. at 628-

---

[5] For a full recital of the facts, see *Patry* v. *Harmony Homes, Inc.*, 10 Mass. App. Ct. at 1-4.

631. *Homsi* v. *C.H. Babb Co.*, 10 Mass. App. Ct. 474, 481-482 (1980). Liberty urges that the trial judge ought, however, to have subtracted from the award of legal fees some dollar amount which would penalize the plaintiffs' lawyer, Mr. Ianello, for accepting multiple employment which, at the least, carried a whiff of conflict of interest.[6] The judge did not skirt the issue. He registered his opinion that Mr. Ianello ought to have avoided the multiple employment, but concluded that, in the final analysis, neither "client was actually prejudiced by [Mr.] Ianello's dual representation of their interests." Mindful of the discretion reposed in the trial judge to award reasonable legal fees, we are disinclined to disturb his resolution of a question which is affected by the factual context of the particular case. We do not, however, intimate that it is beyond the discretion of a judge, in determining the reasonableness of legal fees, to penalize a lawyer for conduct of which the court disapproves and which may have exacerbated the underlying litigation. We quite understand that the legal fees component of a c. 93A judgment is paid to the plaintiff, not the plaintiff's lawyer, but, as a practical matter, the judicial determination of what is the reasonable fee will determine what a plaintiff's lawyer in such a case will charge.

*Judgment affirmed.*

---

[6] After he had begun representing the plaintiffs, Mr. Ianello took on representation of a tenant in the trailer park who was resisting eviction from an approved lot. The plaintiffs had indicated that they might accept that lot as a substitute for the one which they had agreed to rent, but which Liberty could not make available because of its inability to secure the necessary public approvals. Mr. Ianello's success in fending off, for a time, the eviction of his second client may have handicapped Liberty in mitigating the plaintiffs' damages.