DONALD M. BACHMAN & another[1] *vs.* ROBERT E. PARKIN & another.[2] November 30, 1984. *Damages*, For breach of contract, Consumer protection case, Attorney's fees. *Contract*, Building contract, Performance and breach. *Consumer Protection Act*, Damages.

This is an action by the Bachmans (Owners) against Robert E. Parkin, doing business as Solar "100," Inc. (Builder), based upon alleged breaches by Builder of a "purchase and sale" agreement and a subsequent "escrow" agreement whereby, for a stated consideration of $156,000, Builder was to construct a solar-heated house on a parcel of land owned by Builder in Wayland and to convey land and building to Owners. Besides their ordinary contract claim, Owners sought multiple recovery under G. L. c. 93A (Reg-

---

[1] Karen D. Bachman, his wife.

[2] Ann Parkin, his wife.

ulation of Business Practices for Consumer's Protection).[3] They also de-
manded attorney's fees and costs. These claims were met by denials and a
counterclaim on the part of Builder.[4]

The case was tried, nonjury, for ten days. Upon findings of fact and
conclusions of law, the judge held, in effect, that Builder was in breach of
the agreements and accordingly that Owners were entitled to net compensa-
tory damages of $23,049,[5] and (under the terms of the escrow agreement)
to attorney's fees of $10,000. Although Builder was found to have violated
§ 2 of c. 93A, the judge declined any multiple recovery because, in his
view, the breaches were not wilful. Owners and Builder cross appealed.

The judge's findings are conscientious and detailed and (with a criticism,
as will be seen) we accept them as not "clearly erroneous," see Mass.
R.Civ.P. 52(a), 365 Mass. 816 (1974). His conclusions of law (again with
a reservation) we think justified. From the welter of arguments on both
sides it will be necessary to deal only with the following points.

1. Builder fell short of his undertakings in numerous ways outlined in
the findings, and notably in connection with the solar heating system. After
Owners went into possession, they contracted with others to attempt to
rectify the defects, but they went further and in various respects, at consid-
erable expense, extended or transformed the plan of the house to create a
better house than had been agreed. In figuring the contract damages, the
judge had to put aside, as not recoverable, Owners' expenditures for the
latter, extraneous purpose. This could not be done with mathematical pre-
cision: a single repair might cure Builder's breach but go beyond. Estimation
was necessarily involved. We think the judge adjusted reasonably. For the
rest, that is, in calculating the damages attributable to breaches of the
agreements proper, the judge applied the conventional formula — "the
reasonable cost of completing the contract and repairing the defendant's
defective performance less such part of the contract price as has not been
paid," *DiMare* v. *Capaldi*, 336 Mass. 497, 502 (1957) — and again he is
not to be faulted.

2. The judge held, correctly, that by reason of Builder's failure to carry
out numerous obligations listed under the heading of "warranties" — includ-
ing the obligation to construct a solar heating system estimated, under
normal circumstances of climate and usage, to provide approximately 85%
of the heating requirements of the house — Builder stood in violation of
c. 93A, § 2. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 702 (1975);

---

[3] Other theories advanced need not be discussed.

[4] Collateral to the action as above described was a claim by Owners to undo a conveyance
by Builder of other property to his codefendant wife, alleged to be a fraudulent device
to obstruct recovery against him. The claim succeeded and is not a subject of appeal.

[5] For this purpose we meld the results of the main action and counterclaim. The liability
was cast upon Parkin personally, the agreements having been found to be with him, not
with the named corporation.

*Linthicum* v. *Archambault*, 379 Mass. 381, 387-388 (1979); *Calimlim* v. *Foreign Car Center, Inc.*, 392 Mass. 228, 232 (1984).[6] Section 9(3) of c. 93A, inserted by St. 1967, c. 813, § 1, deals with multiple recovery. It states, in part, that recovery shall be "up to three but not less than two times such amount [i.e., actual damages] if the court finds . . . a willful or knowing violation of said section two." The judge, however, concluded that Builder was not in "wilful" (or knowing) violation. Owners protest that on the record Builder was in wilful violation as matter of law. To be sure, some of the breaches appear to have been grievous, but that is not the equivalent of "wilful" as limned by our decisions. See *Linthicum* v. *Archambault, supra*, 379 Mass. at 388; *Grossman* v. *Waltham Chem. Co.*, 14 Mass. App. Ct. 932, 934 (1982); *Patry* v. *Liberty Mobilhome Sales, Inc.*, 15 Mass. App. Ct. 701, 705-706 (1983); *Brandt* v. *Olympic Constr., Inc.*, 16 Mass. App. Ct. 913 (1983). See also the recent careful examination of the notion of wilfulness by Keeton, J., in *Computer Syss. Engr., Inc.* v. *Qantel Corp.*, 571 F.Supp. 1365, 1375 (D.Mass. 1983), aff'd, 740 F.2d 59 (1st Cir. 1984). On the record, we have no reason to overturn the judge's view that Builder's faulty performance did not partake of the meretricious quality signified by "wilful."[7]

3. Owners point out that § 9(3) provides, as an alternative basis for multiple recovery, that "the refusal [of supplier] to grant relief upon [consumer's] demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two." In the present case, Builder proposed a settlement in response to Owners' demand letter, but Owners contend that it was little more than a sham.[8] The judge did not deal adequately with this problem. If he thought a lack of wilfulness in the breaches of contract excluded a multiple recovery stemming from Builder's settlement offer, he was in error, as the two matters are expressed in the disjunctive in § 9(3) and are not substantively equivalent. See *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 628 (1978); *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 857 (1983). We do not think we ought to attempt to decide on the record whether Builder's settlement pro-

---

[6] Section 2(*a*), inserted by St. 1967, c. 813, § 1, states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The Attorney General is authorized by § 2(*c*) to make "rules and regulations interpreting the provisions of subsection 2(*a*)"; the pertinent ones relating to the kinds of breaches here involved are 20 Code Mass.Regs. §§ 3.01(9) and 3.08(2); cf. § 3.16 (1978).

[7] There was no inconsistency in the judge's stating that Builder used "a model which he knew or should have known would not satisfy the requirements of [Owners]." The "model" referred to was Builder's own home which, it was understood, would need changes in order to suit Owners. In context, the judge's criticism implied at most negligence, not wilfulness.

[8] For instance, Owners questioned Builder's good faith in offering a settlement through Solar "100," Inc., which might be without assets. (We venture no opinion on the point.)

posal was made in good faith (a proposition on which Builder would have the burden, see *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795, 799 [1976]). Accordingly, the case will be returned to the trial court for consideration of the point, with liberty, if the judge should think appropriate, to receive further evidence. See *Giannasca* v. *Everett Aluminum, Inc.*, 13 Mass. App. Ct. 208, 214 (1982).[9]

4. Under the terms of the "escrow" agreement, $20,000 of the price was to be withheld until Builder had faithfully completed his performance under the main "purchase and sale" contract; thus the escrow in effect incorporated the obligations of the main contract. The escrow stated that in the event of litigation "[t]he prevailing party shall be entitled to reasonable attorney's fees and expenses from the party deemed to have breached this agreement." Under this provision the judge awarded attorney's fees of $10,000 to Owners taken, on the whole, to be the prevailing parties, but it remains unclear how he arrived at the figure: we do not know whether or to what extent it was intended to cover expenses incurred for the charges of Owners' experts or for other purposes. Upon the remand, the judge should make due explanation, again with liberty to receive evidence. He will be entitled to exercise judgment regarding any award for work on the present appeal, as to which Owners may again be considered to be the prevailing parties. See *Mellor* v. *Berman*, 390 Mass. 275, 284 (1983).

As the escrow provides by agreement for recovery of attorney's fees and expenses, we suppose it to be unlikely that there will be occasion in any event to resort to the provisions of § 9(4) of c. 93A for such allowances.

The case is remanded for further proceedings as indicated; otherwise the judgment is affirmed.

*So ordered.*

*James A. Frieden* for the plaintiffs.
*Daniel T. Bowie* for the defendants.

---

[9] As to good faith in responding to consumer's demand, see *Patry* v. *Liberty Mobilhome Sales, Inc., supra,* 15 Mass. App. Ct. at 706; *Calimlim* v. *Foreign Car Center, Inc.,* 392 Mass. at 234.