JULIUS SIMAS, JR. *vs.* HOUSE OF CABINETS, INC.

No. 99-P-1121.

Middlesex. June 6, 2001. - October 30, 2001.

Present: LENK, DOERFER, & COHEN, JJ.

*Contract,* Building contract. *Evidence,* Acceptance or rejection of testimony. *Arbitration,* Consumer Protection Act, Judicial review, Appropriateness of judicial proceedings. *Consumer Protection Act,* Arbitration, Availability of remedy, Demand letter, Offer of settlement, Attorney's fees. *Practice, Civil,* Consumer protection case, Amendment, Findings by judge.

At a civil trial, the exclusion of certain testimony regarding a telephone conversation was not error, where the plaintiff was allowed to testify as to the substance of the excluded conversation, and therefore suffered no prejudice from the ruling. [135-136]

A person who purchased a pre-existing house and intended to use it as an owner-occupied dwelling as soon as home improvement work was done was within the class of individuals who could seek arbitration under G. L. c. 142A to settle a dispute arising from a home improvement contract. [136-137]

A homeowner who sought arbitration under G. L. c. 142A to settle a dispute arising from a home improvement contract was not precluded from later pursuing a claim in Superior Court under G. L. c. 93A, where there was no language in c. 142A that restricted an arbitrating homeowner's rights under c. 93A, and where, even if one assumed that the homeowner's c. 93A claim was arbitrable at his election, his failure to request that the c. 93A claim be considered at arbitration did not preclude a later action in court, because everyone concerned in the arbitration operated under the assumption that c. 93A claims were not to be heard at arbitration [137-138]; the trial judge did not err in allowing the homeowner to amend his request for relief to include a claim for c. 93A damages, where the c. 93A claim was not intended to be arbitrated, was not included in the request for arbitration, and was not heard or decided by the arbitrator [138-139].

At the trial of a civil complaint alleging violations of G. L. c. 93A, the judge did not err in concluding that a homeowner made a proper demand on a home improvement contractor where, although the letter that the homeowner sent did not specify a dollar amount of damages, it described the homeowner's injuries in sufficient detail to permit the contractor reasonably to ascertain its exposure, and where the homeowner sent the contractor a second letter three weeks later in which an explicit sum was demanded to settle the dispute. [139-140]

At the trial of a civil complaint alleging violations of G. L. c. 93A, the judge

did not err in finding that a home improvement contractor failed to make a reasonable tender of settlement offer in response to a homeowner's demand letters, where the contractor's response to each letter was to deny liability and to demand additional payment. [140]

At the trial of a civil complaint alleging violations of G. L. c. 93A, the judge did not err in computing attorney's fees and costs, where the judge carefully took into account the pertinent factors in calculating the amount; further, because the issue of the appropriateness of awarding attorney's fees was not contested at the trial level, this court did not consider it on appeal. [140-141]

At the trial of a civil complaint alleging violations of G. L. c. 93A, where the judge reserved the c. 93A claim to himself while submitting the underlying breach of contract claim to the jury, the judge was not constrained by the jury's finding, and was entitled to reach his own conclusions on the import of particular actions taken by the parties. [141]

CIVIL ACTION commenced in the Superior Court Department on March 11, 1994.

The case was tried before *Robert Malcolm Graham*, J.

*Samuel L. Rodriguez* for the plaintiff.

*Robert H. D'Auria* for the defendant.

COHEN, J. These cross appeals arise from an eight year old dispute between Simas, a homeowner, and the House of Cabinets, Inc., a building contractor (contractor), over a home-improvement project gone awry. After nonbinding arbitration pursuant to G. L. c. 142A, the case was heard de novo in the Superior Court. A jury returned a verdict for the contractor on Simas's claim for breach of contract; however, the trial judge reserved a related claim under G. L. c. 93A, § 9, and decided it in favor of Simas. For the reasons that follow, we conclude that neither party's appeal has merit, and we affirm.

1. *Background.* In August, 1993, Simas purchased a single-family house in Burlington, Massachusetts, and before moving in, he hired the contractor to make renovations. The parties entered into three separate contracts, all dated August 3, 1993, for work to be done on various parts of the house. The total price of the three contracts was $36,311.93. Under each of the agreements, Simas was to pay the contractor an initial amount upon execution of the contract, additional amounts at various stages of each project, and the balance upon completion. In each contract, the contractor agreed to perform the specified

work, to obtain all necessary permits, and to "perform this contract in conformity with customary industry standards." Each contract also contained a clause providing for nonbinding arbitration.

Suffice it to say that the job did not go smoothly, and the project was terminated before the work was completed. After an exchange of written demands and counter-demands, Simas filed a request for arbitration with the home improvement contractor arbitration program of the executive office of consumer affairs, pursuant to G. L. c. 142A, on a form provided by that office.

General Laws c. 142A, entitled "Regulation of Home Improvement Contractors," was inserted by St. 1991, c. 453. Among other things, it enumerates prohibited acts which may subject a contractor or subcontractor to administrative sanctions, criminal prosecution, and civil remedies. G. L. c. 142A, § 17. It also sets out requirements for residential contracting agreements and authorizes the inclusion of arbitration clauses, so long as the provisions are clearly and conspicuously disclosed in language designated by the director of consumer affairs and business regulation, and each party assents by separately signing and dating the provision. G. L. c. 142A, § 2.[1] The statute establishes a private arbitration services program, to be approved by the director, to consider disputes arising from contracts for residential contracting services. G. L. c. 142A, § 4. This program is made available not only in cases where the parties have contracted to use it, as was the case here, but also at the homeowner's request, in cases where there is no arbitration agreement.[2] G. L. c. 142A, § 3(*b*). The arbitrator's decision is not final; it may be appealed by seeking a trial de novo in the Superior or District Court, within twenty-one days of the issuance of the arbitrator's findings. G. L. c. 142A, § 4(*e*). In the trial de novo, "[a]ll findings of fact issuing from arbitra-

---

[1] It is undisputed that the arbitration clauses in the parties' contracts met these statutory requirements.

[2] Alternatively, any party who is not precluded from doing so by an enforceable agreement to arbitrate or by operation of the statutory provision providing for arbitration at the homeowner's election may proceed in the first instance by way of civil action in Superior, District, or Small Claims Court. G. L. c. 142A, § 3(*a*).

tion shall be taken as prima facie evidence . . . ." G. L. c. 142A, § 4(d).

On February 25, 1994, the arbitration in this case was decided in favor of Simas. The arbitrator found, inter alia, that the contracted work was incomplete and performed poorly; that the contractor violated the payment schedule by invoicing and receiving payment for work that had not been done and materials that had not been delivered; that the contractor failed to procure all legally required permits; and that the contractor covered up work requiring rough inspection without first having had it examined by the appropriate town building officials. The arbitrator awarded Simas damages of $29,957.00, plus $800.00 in reimbursement of the arbitration fee.

On March 11, 1994, the contractor initiated an action in the Superior Court by filing a document entitled "Defendant's Appeal of Arbitrator's Decision Pursuant to Massachusetts General Laws Chapter 142A." Although filed by the contractor, this document was styled as a pleading in which Simas was named as the plaintiff and the contractor was named as the defendant. It prayed for a trial de novo of the arbitrator's decision and contained a jury demand on behalf of the defendant.[3]

The contractor's filing was accepted as the equivalent of a complaint; the case was entered; and discovery ensued. However, because of the manner in which the initial pleading was styled, Simas did not respond with an answer or counterclaim. It was not until nearly a year later that Simas attempted a pleading of his own by filing a paper entitled "Motion to Amend Request for Relief." In this document, Simas sought leave to amend his request for arbitration to include a demand for relief under G. L. c. 93A. Simas's motion was allowed, over the contractor's opposition, by a judge other than the one who later presided at the trial. As a result, Simas's c. 93A claim was included with Simas's claim under G. L. c. 142A in the de novo proceedings.

---

[3]Proceeding in this fashion was irregular. The contractor should have filed a complaint naming itself as the plaintiff and Simas as the defendant. See *Parekh Constr., Inc.* v. *Pitt Constr. Corp.*, 31 Mass. App. Ct. 354, 357 (1991) (party seeking to nullify award in case arbitrated under auspices of G. L. c. 251 could attempt to do so by filing complaint, as plaintiff, in Superior Court).

The claim under G. L. c. 142A was submitted to the jury as a simple claim for breach of contract.[4] The jury answered "No" to a special question asking, "Did the House of Cabinets, Inc. breach the contract with Julius J. Simas, Jr.?" Thereafter the judge, in considering the c. 93A claim, found that the contractor had committed a number of violations of G. L. c. 142A that entitled Simas to relief under G. L. c. 93A.[5] The judge found further that Simas had suffered damages on account of some, but not all, of these violations and assessed total damages of $19,198.00. Because the judge also found that the contractor had not made a written tender of settlement under G. L. c. 93A, § 9(3), he ruled that Simas was entitled to recover costs of $4,474.30, and attorney's fees in the amount of $9,800. Judgment therefore entered on the c. 93A claim in the amount of $33,472.30, plus prejudgment interest from October 14, 1993, the date of Simas's initial written demand to the contractor.

2. *Simas's appeal.* Simas raises but one point in his appeal from the judgment against him on the jury's verdict on the breach of contract claim: that the trial judge erroneously excluded testimony about a telephone conversation on September 28, 1993, between Simas and the contractor's attorney, and a related letter from the contractor's attorney to Simas dated October 1, 1993. Simas contends that the excluded evidence was essential to rebut the contractor's defense to the breach of contract claim, which was that it remained willing to work on the project and to correct any deficiencies, but was prevented from doing so because Simas went to the premises on September 28, 1993, and removed the key that the contractor had been using to enter. According to Simas, the excluded testimony and

---

[4]One of the prohibited acts listed in G. L. c. 142A, § 17, is tantamount to breach of contract: "abandoning or failing to perform, without justification, any contract or project engaged in or undertaken by a registered contractor or subcontractor, or deviating from or disregarding plans or specifications in any material respect without the consent of the owner." G. L. c. 142A, § 17(2). Although the arbitrator also found other violations of c. 142A, the plaintiff does not claim that any additional bases for recovery should have been submitted to the jury during the trial de novo.

[5]General Laws c. 142A, § 17, as inserted by St. 1991, c. 453, provides, in pertinent part, "Violations of any of the provisions of this chapter shall constitute an unfair or deceptive act under the provisions of chapter ninety-three A."

letter would have established that, by September 28, the contractor had refused to perform any further work unless Simas made an additional, unjustified payment.

The fatal flaw in Simas's argument is that the trial judge did, in fact, permit him to testify that he removed the key only after he learned that the contractor was refusing to do any more work unless it received more money. Since the substance of the excluded conversation ultimately came in evidence, Simas suffered no prejudice from the trial judge's ruling. See *Powers* v. *H.B. Smith Co.*, 42 Mass. App. Ct. 657, 663 (1997). Furthermore, insofar as the October 1, 1993, letter is concerned, it appears never to have been offered in evidence or marked for identification.[6] Simas therefore failed to preserve the issue. See *Baker* v. *Rosen*, 331 Mass. 763 (1954); *Roberts* v. *Southwick*, 415 Mass. 465, 467-468 (1993).

3. *Contractor's appeal.* As a threshold matter, the contractor contends that, because Simas never lived in the house where the work was performed, he was not entitled to the protection of G. L. c. 142A and could not sue for damages under G. L. c. 93A on account of c. 142A violations. General Laws c. 142A, § 1, defines an "owner" as "any homeowner of a pre-existing owner-occupied building containing at least one but not more than four dwelling units, or tenant thereof, who orders, contracts for, or purchases the services of a contractor or subcontractor." The contractor reads the words "pre-existing owner-occupied" to mean that only homeowners who physically occupied their houses before contracting for improvements are entitled to the statute's protection.

We reject this interpretation. The words "pre-existing owner-occupied" modify the word "building." Here there was no dispute that Simas's house was a pre-existing building; nor was there any dispute that the building was purchased by Simas for use as an owner-occupied dwelling as soon as the work was done. We think this was sufficient to bring Simas within the

---

[6]Indeed, while pressing the point that the conversation should come in evidence, plaintiff's counsel appeared to concede that the letter was not admissible. He argued to the judge: "Do you mind if I show you — it's not admissible — do you mind if I show you the attorney's letter where he specifically says, 'Pay more money; you're not going to go back on the job?' Does that help you, your Honor?"

class of individuals protected by the statute, as the contractor no doubt recognized when he signed three contracts containing an arbitration clause that explicitly referred to G. L. c. 142A.[7]

The contractor next argues that Simas was precluded from pursuing his c. 93A claim because he elected to proceed to arbitration rather than bringing suit. The contractor fails to mention that Simas was contractually committed to go to arbitration "prior to proceeding to legal action in the courts" but given that fact, the defendant's argument reduces itself to the proposition that Simas forfeited his 93A claim simply by agreeing to arbitrate under the auspices of the approved program and not raising the claim in the arbitration proceedings. This position is untenable.

There is no language in G. L. c. 142A that restricts an arbitrating homeowner's rights under G. L. c. 93A. If anything, the statute reflects an intention to facilitate a homeowner's c. 93A remedies by stating explicitly in G. L. c. 142A, § 17, that violation of any of the provisions of c. 142A shall constitute an unfair or deceptive act under the provisions of c. 93A. See note 5, *supra*. We ascertain no legislative intent to deprive owners who agree to participate in the arbitration program of the opportunity to advance a c. 93A claim.

Furthermore, even if we assume that Simas's G. L. c. 93A, § 9, claim was arbitrable at his election,[8] his failure to request that the c. 93A claim be considered at arbitration did not preclude a later action in court. The record reflects that everyone concerned — the parties, the arbitrator, and even the executive office of consumer affairs which promulgated the checklist form

---

[7]Each arbitration clause reads: "The contractor and the owner hereby mutually agree in advance that in the event of a dispute concerning the attached contract . . . the parties shall submit such dispute to a private arbitration service which has been approved by the secretary of the Executive Office of Consumer Affairs, as provided in Chapter 142A of the general laws, prior to either party proceeding to legal action in the courts."

[8]Compare Hannon v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 826-827 (1982) (by virtue of G. L. c. 93A, § 9(6), plaintiff could not be compelled to arbitrate claim under c. 93A, § 9, even though he had agreed to a broadly worded arbitration clause).

of arbitration demand which was utilized in this case[9] — operated under the assumption that c. 93A claims were not to be heard at arbitration. Thus, the c. 93A claim was not within the scope of the c. 142A arbitration as framed by the arbitration demand, and Simas remained free to litigate it in court. See *TLT Constr. Corp.* v. *A. Anthony Tappe & Assocs., Inc.*, 48 Mass. App. Ct. 1, 13 (1999) (error to dismiss G. L. c. 93A, § 11, claim on claim preclusion grounds where record did not establish that parties intended to litigate c. 93A claim in prior arbitration proceedings or that arbitrator was asked to consider or decide it). See also *Blanchette* v. *School Comm. of Westwood*, 427 Mass. 176, 183-184 (1998) (where teacher's statutory civil rights claim was not submitted to arbitration together with her grievance, she did not waive her right to pursue her claim in judicial forum). Contrast *Miles* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427 (1992); *DaLuz* v. *Department of Correction*, 434 Mass. 40, 45-46 (2001).

The contractor's related claim, that it was error for the Superior Court to allow Simas's motion to amend his request for relief to include a claim for c. 93A damages, is equally without merit. Although we agree with the contractor that the asserted basis for the amendment was questionable, we nevertheless conclude that it was appropriate to allow the c. 93A claim to go forward in conjunction with the trial de novo.

In his motion to amend, Simas contended that the amendment was necessary to conform the pleadings to the evidence at the arbitration.[10] However, the arbitrator's findings do not reflect that she considered any claims under G. L. c. 93A. To the contrary, as we have observed previously and as the contractor

---

[9]The form requires the filer to check off boxes and to fill in blanks. In the section entitled "Requested Relief" the filer may check off and itemize any monetary damages being sought, but there is no specific mention of relief under G. L. c. 93A.

[10]Simas represented that, although his initial request for arbitration did not seek c. 93A damages, he had made proper demand under G. L. c. 93A, § 9; the c. 93A claim was put at issue during the arbitration "by express or implied consent of the parties"; and the arbitrator "found that there had been a [c.] 93A violation." Simas appears to have based this representation on the fact that the arbitrator found violations of G. L. c. 142A which, as previously noted, are per se violations of G. L. c. 93A. See G. L. c. 142A, § 17, and note 5, *supra*. However, the arbitrator's finding of a predicate for a c. 93A violation

concedes, the c. 93A claim was not raised in the arbitration. We therefore conclude that it was appropriate for the motion judge to have allowed Simas to assert his c. 93A claim in the Superior Court proceedings, not because the c. 93A claim had, in fact, been tried to the arbitrator and was required to be tried again at the trial de novo, but because the c. 93A claim was not intended to be arbitrated, was not included in the request for arbitration, and was not heard or decided by the arbitrator. See *TLT Constr. Corp.* v. *A. Anthony Tappe & Assocs., Inc., supra* at 13.

The contractor's next contention is that the trial judge erred in concluding that Simas made a proper demand under G. L. c. 93A, § 9. On October 14, 1993, Simas's counsel sent a letter to the contractor's counsel which identified itself as a c. 93A demand letter. The letter cited specific ways in which the contracts between the parties failed to comply with G. L. c. 142A, § 2; it recounted the contractor's failure to obtain legally required construction permits, which resulted in a stop-work order from the town's building inspector; and it set forth a detailed list of defects in workmanship which required repair. The letter stated further that "[b]ecause of the unfair and deceptive acts and practices employed by [the contractor], Mr. Simas has been seriously damaged in an amount as yet not fully determined." In closing, the letter stated that Simas intended to seek remedies under G. L. c. 93A and invited the contractor's counsel to telephone Simas's counsel "to discuss how our clients should proceed from here."

A demand letter under G. L. c. 93A, § 9, must identify the claimant and reasonably describe the unfair or deceptive act or practice relied upon and the injury suffered. G. L. c. 93A, § 9(3). An adequate demand letter will "define the injury suffered and the relief demanded in a manner that provides the prospective defendant with 'an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied' and enables him to make 'a reasonable tender of settlement.' " *Spring* v. *Geriatric Authy. of Holyoke*, 394 Mass. 274, 288 (1985), quoting from *York* v. *Sullivan*, 369 Mass. 157, 162-163 (1975).

---

does not support the conclusion that the arbitrator considered and made findings on a c. 93A claim.

Here, although the October 14, 1993, letter did not specify a dollar amount of damages, it described Simas's injuries in sufficient detail to permit the contractor reasonably to ascertain its exposure. See *Brandt* v. *Olympic Constr., Inc.*, 16 Mass. App. Ct. 913, 915 (1983) (demand letter sufficient where amount of compensation owed was apparent from facts alleged); *Fredericks* v. *Rosenblatt*, 40 Mass. App. Ct. 713, 717-718 (1996) (demand letter sufficient where it concretely described purported injury and amount of damages was reasonably ascertainable). Significantly, in this case, the contractor's business routinely required it to estimate the costs of making home improvements. Thus, the contractor was actually in a better position than Simas to compute the expense which would be involved in rectifying the defects described in Simas's letter. Furthermore, any doubt the contractor may have had as to the exact amount of damages claimed by Simas was quickly dispelled by a subsequent letter sent by Simas's counsel on November 4, 1993, in which the sum of $29,457.00 was explicitly demanded to settle the dispute. The judge correctly concluded that Simas made sufficient demand.

The contractor also claims that the trial judge erred in finding that it failed to make a reasonable tender of settlement in response to Simas's demand. The contractor's attorney responded in writing to both the October 13, 1993, letter and the November 4, 1993, letter. Both times, the contractor denied liability and demanded additional payment from Simas. The reasonableness of the contractor's response was a question of fact for the judge to determine in light of the terms of the demand and all of the attendant facts and circumstances. See *Patry* v. *Harmony Homes, Inc.*, 10 Mass. App. Ct. 1, 6 (1980). We perceive no error.

Nor do we find any error in the trial judge's computation of attorney's fees and costs. As the findings illustrate, the judge's calculation carefully took into account the pertinent factors. See *Patry* v. *Liberty Mobilehome Sales, Inc.*, 15 Mass. App. Ct. 701, 706 (1983). The judge took special note of the fact that the contractor did not argue that it was inappropriate to award attorney's fees incurred by Simas in connection with the arbitration proceedings; the contractor only contested the amount of

those fees. Contrast *Schultz* v. *Subaru of America, Inc.*, 407 Mass. 1004, 1005 (1990) (issue raised and decided that attorney's fees incurred in arbitration pursuant to G. L. c. 90, § 7N$^{1}$/$_2$ [6] were not recoverable in subsequent c. 93A action). We therefore do not consider the contractor's new contention that it was impermissible to award any arbitration-related fees. See *Palmer* v. *Murphy*, 42 Mass. App. Ct. 334, 338-339 (1997) (issues not raised in trial court are waived on appeal).

Finally, the contractor directly challenges the judge's c. 93A decision, claiming that the jury's finding for the contractor was entitled to preclusive effect or, alternatively, that the judge erroneously failed to consider (as the contractor assumes the jury did) the significance of Simas's removal of the key. As previously observed, the jury were given only the claim for breach of contract, and the judge reserved the c. 93A claim for himself. Accordingly, the judge was permitted to make his own decision on the more expansive c. 93A claim without being constrained by the jury's finding, and was entitled to reach his own conclusions on the import of Simas's actions. See *Chamberlayne Sch. & Chamberlayne Jr. College* v. *Banker*, 30 Mass. App. Ct. 346, 354-355 (1991).

*Judgment affirmed.*