Meagher, J.
The defendant is aggrieved by the trial judge’s denial of two “Requests for Conclusions of Law” and a finding of fact that the defendant’s acts or practices were willful under M.G.L.c. 93A The two requests and their responses are:
2.The plaintiff, by accepting the terms of the “Receipt & Agreement”, is bound by the limitation of liability of Anton’s listed on the storage “Receipt & Agreement”, (i.e. $100.00), in the absence of fraud, whether or not she read the contract. (D’Aloisio v. Morton’s Inc., 342 Mass. 231).
Ruling of the Court: Denied as inconsistent with the findings made in the memorandum decision and as inaccurately and incompletely paraphrasing et written document.
3. The limits of liability in the “Receipt & Agreement” is binding not only with respect to recovery on the contract of bailment but also with respect to recovery for ordinary negligence. (D’Aloisio v. Morton’s Inc., 342 Mass. 231).
Ruling of the Court: Denied.
The trial judge made the following findings of fact:
On November 27,1988, Plaintiff purchased a mink coat (“the mink”) for a purchase price, including tax, of $3928.75. On April 10, 1989, Plaintiffs mother, at Plaintiffs request and with his authority, took the mink to Defendant’s cleaners in Melrose in order to arrange to have it stored by Defendant. The clerk at the Melrose cleaners, who was an employee of the Defendant, filled out a form called “Receipt and Agreement” and, without explanation, asked Plaintiffs mother to sign the Receipt and Agreement. Plaintiffs mother did so, and the clerk accepted the coat for storage, upon payment of a fee of $15.95.
The Receipt and Agreement contained printed and handwritten matter on the front, and it also contained a great deal of printed matter on the back. However, when the Receipt and Agreement was presented for signature it was presented in a type of metal container which firmly held the document in place, face up, and did not permit examination of the reverse. The clerk did not state that there was any language on the reverse and the front of the document did not refer in any way to language on the reverse. At the time that Plaintiff s mother signed the document she had no reason to believe that the document contained any written material other than what was on the *30 front of the document, and due to the actions of Defendant’s employee, in the exercise of reasonable care Plaintiffs mother would have been unable to determine that there was anything written on the reverse. In those circumstances it was a fraudulent and deceptive act or practice for the Defendant to attempt to enforce any term contained on the back of the document.
Plaintiff, however is held to have agreed to the terms stated on the front of the document.
The mink was sent from the Melrose establishment to Defendant’s vault in Malden for storage. Defendant’s records adequately documented the shipment and storage.
The vault was a large room, primarily underground, with thick concrete malls and one door, which was connected to an alarm. There was no window. The vault had two levels of hanging racks, on which stored furs were hung. The mink was hung in the vault.
On or about October 17 or 18, 1989, during the night, someone cut an approximately 10-inch hole in an air duct leading from the vault to the outside of the building. Through that hole the person responsible was able to reach, possibly with the aid of a stick or tool, and pull about 25 coats out through the hole. The next day the theft was discovered. The mink was one of the coats determined to be missing after the theft, and it was more likely than not that the mink was stolen by the air duct thief.
The fact that a thief was able to gain access to the vault and to steal the mink was due to the negligence of the Defendant. It obviously was aware of the great value of the furs it was storing, and its security precautions with respect to the door alarm and the highly restricted access to the vault indicated that securing the contents against theft was a major concern and responsibility. However, it never alarmed the duct, although that was feasible and was in fact done after the theft. The very modest grate across that duct on the outside of the building was manifestly inadequate to provide any substantial protection, and hanging coats within reach, including assisted reach, of such a weak link in the vault’s security was unreasonably careless.
Defendant’s Vice President, Arthur C. Anton, Jr., who testified on its behalf, was candid. He never thought to do anything about the air duct. In light of the extremely high value of the numerous coats stored in the vault— judging from the value of Plaintiff’s single coat — such an oversight was unreasonably careless and amounted to negligence.
Defendant, in any event, has failed to show that it was not negligent, and it is therefore liable, as bailee, for the loss of the coat.
In limitation of its liability, however, Defendant argues that under the “Receipt and Agreement"’ its liability was limited to $100, and it offered to pay Plaintiff $100 for the loss. As previously concluded, in examining this defense this court will only look within the four corners of the front of the Receipt and Agreement. That document states as follows, to the extent here relevant:
*31 “INSURANCE
1. Anton’s provides $100 worth of FREE insurance.
2. If Owner’s insured value is incomplete, only $100 of insurance is provided.
3. If Owner’s insured value is greater than $100, then an additional cost is charged.”
In the form, “owner’s insured value” was left blank; “Anton’s minimum insured value” bears the printed sum $100; and “owner’s additionally insured value” was filled in with the word “min.”
The front of the document in no way states that Anton’s Cleaners was limiting its liability to the “owner’s insured value”, or to any other value, or that Plaintiff was waiving his rights to sue Anton’s. Election or nonelection of increased insurance coverage in no way suggests the relinquishing of any claim (apart from an insurance claim). A motorist who elects not to have collision insurance coverage retains his right to sue a tortfeaser who damages his car; an uninsured homeowner does not waive his right to recover damages from a person who negligently burns down his home. Unless the insurance waiver document which Plaintiff signs expressly states that by waiving excess insurance he is waiving his right to sue for the uninsured excess, there is no waiver of that right to sue, except of course for a suit on the insurance policy itself. To be sure, having full insurance coverage usually allows an individual to recover more easily and more certainly, but an individual can reasonably decline insurance coverage and still retain the right to sue in the more limited circumstances provided by tort and bailment law.
Similarly, insertion of the word “min.” in the space for the “owner’s additional insured value” in no way constitutes an admission that the value of the coat for purposes other than insurance is $100 or “minimum.” The document was drafted by the Defendant, and any ambiguity in it will be resolved against Defendant. Bearing that in mind, there is no limit or bar stated on the front of the document which related to Defendant’s liability for loss of the mink under general bailment law.
As previously stated, Defendant’s efforts to enforce the written matter on the reverse of the “Receipt and Agreement” after presenting the form to the Plaintiff’s mother for signature in a manner which prevented her from knowing that there was anything written on the back, and which prevented her from looking at the back even if she had wanted to, was a fraudulent and deceptive act or practice. Furthermore, after receipt of a demand letter from the Plaintiff under G.Lc. 93A, Defendant, offered to compensate the Plaintiff only $100 for the loss of the mink. That offer was unreasonable, and also constituted a fraudulent and deceptive act; or practice. Both fraudulent and deceptive acts and practices by the Defendant were willful.
As to damages, Plaintiff testified that at the time of his purchase of the coat its value was over $2000 more than the purchase price. I do not credit that opinion. Plaintiff bought that coat from an established furrier, and sales puffery to the contrary, the best evidence of the value of the mink is the price agreed upon and actually paid. By the time of the theft, the coat was nearly a year old, but there was no indication that it had depreciated or appreciated *32 in value. Accordingly, the value of the lost coat was $3928.75. Plaintiff is entitled to recover that amount, trebled because of the Defendant’s willful violation of Chapter 93A, together with interest and a reasonable attorney’s fee.
Judgment should therefore enter for Plaintiff in the amount of $11,786.25, plus interest, costs and a reasonable attorney’s fee in an amount to be determined.
Defendant’s “RequestFor Conclusion of Law #2” is arequestforafinding offactand was appropriately denied for that reason. The trial court referred the defendant to its Memorandum of Decision which contains the trial court’s findings of fact. Stella v. Curtis, 348 Mass. 458 (1965); Butler v. Cromartie, 339 Mass. 4,5 (1959).
The defendant has relied on D’Aloisio v. Morton’s Inc., 342 Mass. 231 (1961) on which to base its grievance with regard to the trial court’s Rulings #2 and #3, yet that case is factually distinct from this case as well as no longer being good law, Although both cases involve the summer storage of a mink coat, the surrounding facts care materially different. Furthermore, Chapter 93A, §2 was enacted more than six years after D’Aloisio was decided; and, unlike the present case, in D’Aloisio there was no indication that the defendant, Morton’s Inc., misled orconcealed informationfrom the plaintiff regarding the terms and limitations of the contract.
Pursuant to subsection 2 (c) of Chapter 93A the Attorney General has promulgated rules interpreting what are unfair or deceptive acts:
Without limiting the scope of any other rule, regulation or statute, an act or practice is aviolation of M.G.L.c. 93A, §2 if... (2) Any person orother legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction.
940 C.M.R. §3.16. (Also, see Patry v. Harmony Homes, Inc., 10 Mass. App. Ct. 1 (1980) and Local 63, Sheet Metal Industry Joint Apprenticeship, a trust v. Bean, 1988 Mass. App. Div. 175.) The facts in this case show that defendant’s actions denied plaintiff an opportunity to consider all of the terms of the agreement prior to signing it. Although the face of the document indicated that the document was a “Receipt and Agreement,” the relevant terms and conditions of the “Agreement” were on the back side. Defendant did not discuss the terms of the agreement, limits of liability, nor the availability of additional insurance with the plaintiff. Under these circumstances, the trial judge acted well within his discretion and applicable law in finding that there was a willful and knowing violation of Chapter 93A, §2.
The trial court found that the defendant’s offer of settlement of $100 after a Chapter 93A demand letter was received was fraudulent, deceptive and willful and a violation of Chapter 93A This finding is well within the proscription of M.G.L.c. 93A §9 which states once a demand is made, based on a Chapter 93Acomplaint, the settlement offer must not be made “in bad faith with knowledge or reason to know that the act or practice complained of violated said section two.” M.G.L.C. 93A §9. Defendant’s settlement offer was unreasonable and in bad faith because it was based on terms not made known to plaintiff.
We find no error in the trial judge’s rulings of law nor in the application of M.G.L.c. 93A Plaintiff is entitled to recover the value of the lost coat, $3928.75, trebled because of the defendant’s willful violation of Chapter 93A in addition to interest and reasonable attorney fees.
Report dismissed.