# DECISIONS

## OF THE

## APPEALS COURT

### OF

## MASSACHUSETTS

TLT Construction Corp. *vs.* A. Anthony Tappe &
Associates, Inc., & another.[1]

No. 97-P-469.

Suffolk. September 11, 1998. - September 30, 1999.

Present: Warner, C.J., Perretta, & Lenk, JJ.

*Res Judicata. Judgment,* Preclusive effect. *Contract,* Building contract. *Arbitration,* Issue preclusion. *Practice, Civil,* Summary judgment, Affidavit. *Consumer Protection Act,* Unfair or deceptive act, Damages.

Principles of res judicata barred a plaintiff's tort claims brought against a party who was essentially the same party as, or in privity with, a party in a prior arbitral proceeding [5-6] and involving essentially the same factual claims [6-8], where the arbitration adjudication constituted a final judgment on the merits [9-10]; however, claims of violation of G. L. c. 93A, arising out of the same circumstances, that the arbitrator did not consider or decide were not so barred [10-13].

In a civil action alleging negligent misrepresentation, fraud, deceit, defamation, and violation of G. L. c. 93A, the defendant did not demonstrate in

---

[1]Jeffrey M. Hoover.

support of its motion for summary judgment that the plaintiff was unlikely to prove the essential element of actual damages at trial, and summary judgment should not have entered for the defendant. [13]

CIVIL ACTION commenced in the Superior Court Department on February 23, 1995.

The case was heard by *John C. Cratsley*, J., on a motion for summary judgment.

*Carol A. Frisoli* for the plaintiff.

*Warren D. Hutchison* for the defendants.

LENK, J. This litigation arises from construction-related disputes between an architect and a general contractor, both of whom had been retained by a municipal owner in connection with a library renovation project. After securing an award in arbitration from the owner for claims based primarily on the architect's actions, the general contractor sued the architect directly for various torts including negligent misrepresentation, interference with contractual relations, and defamation, as well as for unfair and deceptive practices pursuant to G. L. c. 93A. The general contractor's claims arise from the architect's conduct before and during construction, and from a postconstruction evaluation of the general contractor made by the architect to the State certifying authority. The trial court judge granted the architect's motion for summary judgment on all claims; those arising out of the postconstruction evaluation were dismissed because the general contractor had insufficient proof of an essential element of its claims, viz., damages, and the remaining claims were dismissed on the basis of res judicata.

On appeal, the general contractor contends (a) that the general contractor's prior arbitration proceeding against the project owner does not operate as a claim or issue preclusion bar to its direct tort claims against the architect arising from the architect's project performance; (b) that the trial judge erred in granting summary judgment on the evaluation-based claims because there is a genuine issue of material fact whether the general contractor suffered damages; and (c) that it was error to grant summary judgment on the general contractor's claims for G. L. c. 93A violations because res judicata is inapplicable and there are genuine issues of material fact whether the general contractor suffered damages.

We affirm in part and reverse in part.

*Factual background.* The materials before the judge, viewed in the light most favorable to the nonmoving party, disclose these facts. See, e.g., *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 626 (1989). In order to renovate and construct additions to the Beverly Public Library (project), the city of Beverly (owner) entered into a contract (architect contract) with the project architect, A. Anthony Tappe and Associates (architect), and a separate contract (construction contract) with the general contractor, TLT Construction Corporation (contractor). The project did not proceed smoothly. The architect's failure to make decisions and review submittals in a timely manner caused the construction schedule to suffer from various delays and disruptions. Discrepancies in, and subsequent modifications to, the architectural plans caused the contractor to use more building materials and to perform more repair work than anticipated.

Pursuant to the construction contract, the contractor brought an arbitration proceeding against the owner (prior arbitration) in which it sought to recover damages for extra costs incurred on the project. Among other things, the contractor sought damages for additional building materials and labor necessitated by discrepancies in and modifications to the architectural plans (building-related claims), and for employing a superintendent for longer than anticipated (delay claims). Although the architect testified and submitted documents at the arbitration hearing, it was not, and contractually could not have been, joined as a named party in the prior arbitration. Because the construction contract included a "no damages for delay" clause as required by G. L. c. 30, § 39O, the arbitrator determined that the contractor was not entitled to delay damages, and, after hearing the evidence, allowed the owner's motion to strike the contractor's delay claims. The arbitrator essentially found the contractor and the owner each fifty percent responsible for building-related damages, and awarded the contractor half of the costs incurred.

Following completion of project construction, the architect evaluated the contractor's performance on the project and submitted a project evaluation form to the Massachusetts Division of Capital Planning and Operations (DCPO) pursuant to the public bidding statute, G. L. c. 149, § 44D.[2] This evaluation, according to the contractor, contains false and defamatory

[2]General contractors wishing to bid on contracts subject to the public bidding statute, G. L. c. 149, §§ 44A-44H, must meet eligibility requirements as

statements and misrepresentations. It was not addressed in the prior arbitration.

In its subsequent Superior Court action brought directly against the architect, the contractor seeks to recover damages for negligent misrepresentation, interference with contractual relations with the owner, interference with advantageous business relations with DCPO, violation of G. L. c. 93A, and various torts including intentional and negligent misrepresentations, fraud, deceit, and defamation. For ease of discussion, we break these somewhat amorphously pleaded claims into several broad categories: (1) the contractor's tort claims arising out of the architect's performance on the project, including both building-related claims and delay claims (performance-based claims); (2) the contractor's·tort claims arising out of the architect's evaluation of the contractor's project performance; and (3) the contractor's claims under G. L. c. 93A arising out of the architect's project performance and evaluation of the contractor.

*Discussion.* 1. *The contractor's tort claims arising out of the architect's project performance.* The architect asserted its entitlement to summary judgment on these claims based upon the defense of res judicata. It argued, and the judge agreed, that the prior arbitration between the contractor and the owner precluded the contractor's building-related and delay claims brought directly against the architect in the current action.

"The term 'res judicata' includes both claim preclusion and issue preclusion." *Sarvis* v. *Boston Safe Deposit & Trust Co.,* 47 Mass. App. Ct. 86, 98 (1999). "The doctrine of claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action." *Heacock* v. *Heacock,* 402 Mass. 21, 23 (1988). For claim preclusion to bar the contractor's building-related and delay claims against the architect, "three elements are required: (1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause of action; and (3) prior final judgment on the merits." *Gloucester Marine Rys. Corp.* v. *Charles Parisi, Inc.,* 36 Mass. App. Ct. 386, 390 (1994).

"The doctrine of issue preclusion 'prevents relitigation of an

---

set forth by the DCPO. At the conclusion of such projects, the person responsible for oversight of the building construction contract must complete a project evaluation form. DCPO uses this form to determine the contractor's eligibility for bidding on future public projects.

issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies.' [*Heacock* v. *Heacock*, 402 Mass. at 23 n.2.] It requires proof that '(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication is identical to the issue in the current adjudication. Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment.' *Commissioner of the Dept. of Employment & Training* v. *Dugan*, 428 Mass. 138, 142 (1998) (citation omitted). Issue preclusion can be used only to prevent relitigation of issues actually litigated in the prior action. *Fidelity Mgmt. & Research Co.* v. *Ostrander*, 40 Mass. App. Ct. 195, 199 (1996), and thus we look to the record to see what was actually litigated. See *Gleason* v. *Hardware Mut. Cas. Co.*, 324 Mass. 695, 699 (1949)." *Sarvis*, *supra* at 98-99. As the party moving for summary judgment on the basis of claim and issue preclusion, the architect bears the burden of establishing each of these factors. *Sarvis*, *supra* at 99. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989).

a. *Identity or privity of the parties.* Claim preclusion has as a prerequisite that there be an identity or privity of the parties to the present and prior actions, while issue preclusion requires that the party against whom issue preclusion is asserted in the present action was a party or in privity with a party to the prior adjudication. The architect and the owner are not identical, but the architect claims privity with the owner pursuant to the architect contract between the owner and the architect as well as the construction contract between the contractor and the owner. On this basis, the architect contends that it can use the prior arbitration award to preclude the contractor's building-related and delay claims in the current action.

"[O]ne not a party to the first action may use a judgment in that action defensively against a party who was a plaintiff in the first action on the issues which the judgment decided." *Home Owners Fed. Sav. & Loan Assn.* v. *Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448, 455 (1968). *Bailey* v. *Metropolitan Property & Liab. Ins. Co.*, 24 Mass. App. Ct. 34, 36 (1989). "A nonparty to a prior adjudication can be bound by it 'only where [the nonparty's] interest was represented by a party to the prior litigation.' " *Massachusetts Property Ins. Underwriting Assn.* v.

*Norrington*, 395 Mass. 751, 754 (1985), quoting from *Mongeau v. Boutelle*, 10 Mass. App. Ct. 246, 249-250 (1980). See *Morganelli v. Building Inspector of Canton*, 7 Mass. App. Ct. 475, 481 (1979); *Roche v. Roche*, 22 Mass. App. Ct. 306, 309 (1986). See also Note, Developments in the Law — Res Judicata, 65 Harv. L. Rev. 818, 855-865 (1952); Vestal, Res Judicata/Preclusion 120-124 (1969); Vestal, Res Judicata/Preclusion: Expansion, 47 S. Cal. L. Rev. 357, 360-362, 373 (1974); Cortell, The Expanding Scope of the Res Judicata Bar, 54 Tex. L. Rev. 527, 529-530 (1976).

Both the construction contract and the architect contract designate the architect as the owner's representative with authority to act on behalf of the owner during the construction of the project. The architect contract also contains a clause limiting the architect's liability to the owner. Indeed, the contractor's performance-based claims in the prior arbitration and in the present action rest upon the architect's alleged faulty performance under the architect contract. *Associated Constr. Co. v. Camp, Dresser & McKee, Inc.*, 646 F. Supp. 1574, 1578 (D. Conn. 1986).[3] The arbitrator recognized the owner's liability for the architect's actions as its project representative, and ordered the owner to pay damages to the contractor for the architect's actions.

The contractor, however, argues that the construction contract's "no joinder" clause, which prevented the contractor from forcing the architect into that arbitration, prevents the arbitrator's decision from having any preclusive effect on the architect. We conclude the contrary: the "no joinder" clause underscores the privity between the architect and the owner in the prior arbitration. As the trial judge pointed out in his well-reasoned memorandum of decision, "there was no reason for [the architect] to be included in the arbitration because the [owner] was liable for [the architect's] actions." The first prerequisite for claim preclusion was accordingly established by the moving party.

b. *Identity of causes of action.* Claim preclusion requires that

---

[3] "If a party clearly intended to arbitrate the transaction at issue, then that party should not later be permitted to circumvent the prior arbitration award by suing a person who was functionally central to the transaction but who was technically not a party to the arbitration." Shell, Res Judicata and Collateral Estoppel Effects of Commercial Arbitration, 35 UCLA L. Rev. 623, 665 (1988).

there be an identity of causes of action in the prior and present actions. The somewhat more narrow doctrine of issue preclusion acts as a bar in a subsequent action on the same or different claim only when an issue of fact or law was actually litigated and determined by a valid and final judgment and that determination was essential to the judgment.

In the prior arbitration against the owner, the contractor claimed that the architect's acts and omissions caused the contractor to incur additional costs for materials and labor. The arbitrator took into account the problems with the floor height, the structural steel, the duct work, and the punchlist, and ordered the owner to pay the contractor damages for additional material and nondelay-based labor costs. In its direct action against the architect, the contractor bases its building-related tort claims (labeled variously, but not entirely plainly, in the complaint as negligent misrepresentation, interference with contractual relations, and tort) upon acts and omissions relating to floor height, structural steel, duct work, plaster, and punchlist problems.[4]

Similarly, as to the architect's acts and omissions causing delays in the project and consequent additional costs to the contractor, the contractor asserted in the prior arbitration that various incidents involving the architect delayed the project, causing damage to the contractor. The delay claims in the current action are based on essentially the same facts that the contractor relied upon in the prior arbitration, including tardy review of submittals and structural steel drawings, failure to grant time extensions, and issuance of an overinflated punchlist which required substantial administrative time to resolve. The arbitrator heard evidence concerning, and assessed responsibility for, certain delays as between the architect and the contractor in connection with floor elevation plan discrepancies and review of structural steel drawings. Such matters were deemed arbitrable and were in fact arbitrated. While awarding damages for additional material and labor costs arising from the architect's faulty performance, however, the arbitrator determined that he had no authority to compensate the contractor for damages specifically due to the architect's delays. He accord-

---

[4]For example, in the current action, the contractor claims that the architect negligently misrepresented the elevations of certain floor heights which resulted in a discrepancy causing substantial damages to the contractor. The arbitrator, however, already awarded the contractor $9,467.00 for the "discrepancy in the plans prepared by the Architect."

ingly did not award "any additional costs associated with the employment of a superintendent and his lost time."

The contractor's tort claims against the architect in this action arising out of the architect's performance on the project, including both building-related and delay claims, are based on the same set of operative facts and seek redress for the same wrongs as in the prior arbitration. Notwithstanding the contractor's cause of action nomenclature for its tort claims in this litigation and its contract claims in the prior arbitration, the causes of action in both are essentially the same. "A claim is the same for [claim preclusion] purposes if it is derived from the same transaction or series of connected transactions." *Saint Louis* v. *Baystate Med. Center, Inc.*, 30 Mass. App. Ct. 393, 399 (1991), citing *Boyd* v. *Jamaica Plain Co-op. Bank*, 7 Mass. App. Ct. 153, 163-164 (1979). "The statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction, act, agreement, and seeks redress for the same wrong." *Mackintosh* v. *Chambers*, 285 Mass. 594, 596 (1934). See *Tuite & Sons, Inc.* v. *Shawmut Bank, N.A.*, 43 Mass. App. Ct. 751, 753 (1997). Indeed, in the arbitration, the contractor contested the very factual issues concerning responsibility, as between itself and the architect, for actions resulting in additional project costs which it seeks to relitigate in this proceeding. Those factual issues were determined by the arbitrator and were essential to the arbitration award. See *Bailey* v. *Metropolitan Property & Liab. Ins. Co.*, 24 Mass. App. Ct. at 37. The same facts are vital to establishing certain of the elements of the performance-based tort claims that the contractor now asserts in this action against the architect.[5] See *Bradford* v. *Richards*, 11 Mass. App. Ct. 595, 599 (1981). We are satisfied that the architect has shown the requisite identity of causes of action, if not also of factual issues, for res judicata purposes. Contrast *French* v. *Jinright & Ryan, P.C., Architects*, 735 F.2d 433, 436 (11th Cir. 1984); *Carris* v. *John R. Thomas & Assocs.*, 896 P.2d 522, 528-529 (Okla. 1995). Compare *Wellons, Inc.* v. *T.E. Ibberson Co.*, 869 F.2d 1166, 1170 (8th Cir. 1989).

---

[5]By way of example, the contractor alleges that the architect made negligent misrepresentations in its plans regarding floor elevations. The contractor presented evidence on the discrepancy in plans concerning floor alignments at the arbitration and the arbitrator found the architect fifty percent responsible for the resulting discrepancy in floor alignment.

c. *Final judgment on the merits.* Lastly, the architect correctly maintains that the prior arbitration constitutes a final judgment on the merits. An arbitration award has the requisite finality for res judicata purposes because it can be "enforced as any other judgment or decree." G. L. c. 251, § 14.[6] See Restatement (Second) of Judgments § 84 (1982); *Associated Constr. Co.* v. *Camp, Dresser & McKee, Inc.*, 646 F. Supp. at 1577 ("An arbitration award, whether or not sustained by a court judgment constitutes finality for res judicata"); *Miles* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427 (1992). An arbitration award can have preclusive effect if the proceeding involved the elements of adjudicatory procedure. "When arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has." *Bailey* v. *Metropolitan Property & Liab. Ins. Co.*, 24 Mass. App. Ct. at 36-37, quoting from Restatement (Second) of Judgments § 84 comment c. The prior arbitration occurred before an American Arbitration Association construction industry arbitration tribunal, in accordance with the commercial arbitration rules, which provide for an adjudication of claims comparable to judicial proceedings.[7] See *Bailey, supra* at 38 n.3.

There can be no serious question on this point as to the building-related claims. The arbitrator addressed the merits of the contractor's claims for additional material and labor costs and set forth his reasons for awarding or not awarding the contractor money for specific claimed additional costs. The contractor's effort to distinguish the delay-based claims by suggesting that the arbitrator did not really adjudicate them on the merits is equally unavailing.

After the contractor concluded its proofs in the arbitration hearing, the owner asked the arbitrator to dismiss or strike all delay claims on the ground that they were barred by the construction contract and G. L. c. 30, § 39O. In response, the arbitrator issued a detailed interim decision in which he (a)

---

[6]The contractor did not appeal the prior arbitration pursuant to G. L. c. 251, §§ 12 and 13.

[7]The contractor does not dispute that the prior arbitration would have a preclusive effect on any subsequent suit between itself and the owner, but contends that it should not have such effect as to the architect, a nonparty to the arbitration, a point we previously resolved against the contractor.

determined that the delay claims were arbitrable under the construction contract; (b) analyzed the evidence in light of applicable law; and (c) concluded that he could not award the contractor delay damages because of a "no damages for delay" clause in the construction contract. In the final arbitration award, the arbitrator stated that he had no statutory authority to award damages due to delay, and addressed the specific building-related claims.

The striking or dismissal of the claims seeking damages for delay is the equivalent of a dismissal pursuant to Mass.R. Civ.P. 12(b)(6), 365 Mass. 755 (1974), and constitutes an adjudication on the merits for claim preclusion purposes. *Mestek, Inc.* v. *United Pac. Ins. Co.*, 40 Mass. App. Ct. 729, 731 (1996). Mass.R.Civ.P. 41(b)(2), 365 Mass. 804 (1974). The arbitrator acted within his authority in determining whether the contractor was entitled to delay damages under the contract, and accepted evidence and argument on the issue. This is unlike a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party. Mass.R.Civ.P. 41(b)(3), 365 Mass. 805 (1974).[8]

The architect, as the moving party, accordingly demonstrated satisfactorily the prerequisites necessary for the application of res judicata and the trial judge correctly determined that the contractor's tort claims arising out of the architect's project performance were barred.

2. *Evaluation-based tort claims.* The contractor alleges that the evaluation that the architect submitted to DCPO upon completion of the project pursuant to G. L. c. 149, § 44D, contained intentional and willful falsehoods, misrepresentations, and defamatory statements about the contractor. The contractor asserts that these statements constitute intentional and negligent misrepresentations, fraud, deceit, and defamation. The architect sought summary judgment as to these claims because it asserted that proof of actual damages, a necessary element of these

[8]Somewhat similarly, dismissal of an action on the basis of Statute of Frauds, statute of limitations, or the defendant's lack of capacity have been considered sufficiently on the merits to bar a subsequent suit under the doctrine of claim preclusion. *Velasquez* v. *Franz*, 123 N.J. 498, 505-513 (1991). *Smith* v. *Russell Sage College*, 54 N.Y.2d 185, 194 (1981). See Quigley, Dismissal of Action on Statute of Frauds and Statute of Limitations Grounds Is Sufficiently Close to Merits to Bar Subsequent Suit Under Doctrine of Res Judicata, 56 St. John's L. Rev. 763 (1982); Salerno, Civil Procedure — Res Judicata, 22 Seton Hall L. Rev. 1035 (1992).

evaluation-based claims,[9] was unlikely to be forthcoming at trial. As the party moving for summary judgment, the architect must "affirmatively demonstrat[e] that there is no genuine issue of material fact on every relevant issue, even if he would have no burden on an issue if the case were to go to trial." *Pederson* v. *Time, Inc.*, 404 Mass. at 17. The architect supported its motion by an affidavit of its attorney and by reference to the contractor's answers to interrogatories. We examine each in turn.

In his affidavit, the architect's attorney recites that he was informed by the contractor's attorney that a person or persons unnamed at DCPO decided to disregard the architect's evaluation of the contractor and accordingly that the evaluation would not affect the contractor's "DCPO rating." He also recited that "[a]lthough opposing counsel has recently informed my office that [the contractor's] DCPO rating was adversely affected for a year and a half period, no explanation has been given regarding how [the contractor's] rating was directly affected by the conduct of [the architect], or how actual damages in dollar terms were incurred." The contractor's motion to strike this affidavit as being in noncompliance with Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974), was denied in a footnote to the trial judge's memorandum of decision. The judge made clear that, in his view, "it demonstrates the lack of evidence to support [the contractor's] claim for damages as resulting from [the architect's] submission of the feelingmark [evaluation] to DCPO." This was error.

Affidavits in support of motions for summary judgment, among other things, "shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence." Mass.R.Civ.P. 56(e). "All affidavits or portions thereof made on information and belief, as opposed to personal knowledge, are to be disregarded in considering a motion for summary judgment." *Shapiro Equip. Corp.* v. *Morris & Son Constr. Corp.*, 369 Mass. 968, 968 (1976), citing *Automatic Radio Mfg. Co.* v. *Hazeltine Research, Inc.*, 339 U.S. 827, 831 (1950). The affidavit of the architect's attorney was not based

[9]See *Lakian* v. *Globe Newspaper Co.*, 399 Mass. 379, 383 (1987) (defamation); *Poly* v. *Moylan*, 423 Mass. 141, 149 (1996) (misrepresentation); *Warner-Lambert Co.* v. *Execuquest Corp.*, 427 Mass. 46, 47-50 (1998) (deceit). We note that the architect did not assert the defense of qualified immunity and we accordingly do not opine as to it.

on his personal knowledge. It contained blatant hearsay that would be inadmissible at trial. See *Shapiro Equip. Corp.* v. *Morris & Son Constr. Corp.*, 369 Mass. at 968; *Pupecki* v. *James Madison Corp.*, 376 Mass. 212, 217 n.5 (1978). The affidavit of a party's attorney is not exempt from the requirements of rule 56(e) and this affidavit did not comply with the rule. Since it was duly challenged by a motion to strike, the judge did not act within his discretion by considering it. See *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997). Compare *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985). The affidavit should have been struck.

In addition to the defective affidavit, the architect supported its motion for summary judgment by reference to the contractor's answer to interrogatory number twenty. In this interrogatory, the architect asked the contractor for the basis upon which the contractor asserted that the architect had intentionally interfered with the contractor's relationship with DCPO. Notably, the interrogatory asked the contractor only about its intentional interference claim, not its other claims arising from the evaluation. The contractor answered that the impact of the architect's evaluation "on TLT's future bidding capacity is significant and ongoing." While the moving party's supporting material need not disprove the existence of the nonmoving party's damages, it must "demonstrate that proof of [damages] at trial is unlikely to be forthcoming." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 714 (1991). This burden was not met by the architect's reference to a statement by the contractor that the complained of evaluation has a significant and ongoing impact on its future bidding capacity.

Because the architect did not meet its initial burden of affirmatively demonstrating that proof of an essential element of the evaluation-based claims, damages, was unlikely to be forthcoming, summary judgment for the architect on such claims should not have entered. See *Smith* v. *Massimiano*, 414 Mass. 81, 86-87 (1993).

3. *G. L. c. 93A claims.* The contractor claims that the architect engaged in unfair and deceptive trade practices in violation of G. L. c. 93A. It bases these allegations on conduct giving rise to its other claims, namely the architect's project performance and its submission of the evaluation to DCPO. The trial judge granted the architect's motion for summary judgment on all claims without specific explanation of his treatment of the G. L.

c. 93A claims. Nonetheless, we think the judge likely disposed of the G. L. c. 93A claims which arose from the architect's performance on the basis of res judicata, and the G. L. c. 93A claims which arose from the evaluation to DCPO on the basis of lack of damages. We discuss these in reverse order.

The architect contends that actual damages is a necessary element of a G. L. c. 93A, § 11, claim and, since the contractor would be unable to prove damages for the evaluation-based torts, it would also be unable to prove damages for its evaluation-based G. L. c. 93A claim. For the reasons just discussed, summary judgment on the contractor's evaluation-based claims because of lack of proof of damages was improvidently granted. Hence, the contractor's G. L. c. 93A claims based on the evaluation also survive. See *Dulgarian* v. *Stone*, 420 Mass. 843, 853 (1995). ("Defamatory statements are actionable under G. L. c. 93A[, § 11]. . . . However, where allegedly defamatory statements do not support a cause of action for defamation, they also do not support a cause of action under G. L. c. 93A[, § 11]").

Turning now to the performance-based G. L. c. 93A claims, we must determine whether they, like the performance-based tort claims, are barred by res judicata. There is nothing in the record before us to suggest that the parties intended to litigate the c. 93A claims in the arbitration proceedings, or that the arbitrator was asked to consider or decide such claims.[10] Accordingly, in the circumstances of this case, the architect, as the moving party, did not meet its burden of showing that such claims are barred by res judicata and it was error to dismiss the contractor's G. L. c. 93A performance-based claims on this basis. See *Louison* v. *Fischman*, 341 Mass. 309, 313 (1960); *Bailey* v. *Metropolitan Property & Liab. Ins. Co.*, 24 Mass. App. Ct. at 36-37.

*Conclusion.* We affirm the portion of the judgment dismissing the contractor's tort claims based on the architect's performance during the project, reverse the portion of the judgment dismissing the contractor's tort claims based on the evaluation, reverse the portion of the judgment dismissing the contractor's G. L.

---

[10]Massachusetts courts have not yet determined whether and when municipalities are amenable to suit under G. L. c. 93A, § 11, see *U.S. Leasing Corp.* v. *City of Chicopee*, 402 Mass. 228, 232 (1988); *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps. of Boston*, 416 Mass. 269, 271 (1993), and we do not decide this now.

c. 93A, § 11, claims, and remand the case to the Superior Court for further proceedings.

*So ordered.*