CORA BEALS vs. COMMERCIAL UNION INSURANCE COMPANY.[1]

No. 00-P-1840.

Middlesex. February 4, 2003. - May 19, 2004.

Present: PERRETTA, GRASSO, & BERRY, JJ.

*Res Judicata. Insurance,* Motor vehicle insurance, Underinsured motorist, Settlement of claim, Unfair act or practice. *Contract,* Insurance, Performance and breach, Implied covenant of good faith and fair dealing. *Consumer Protection Act,* Unfair act or practice.

In a civil action seeking compensatory damages and attorney's fees arising from the defendant insurance company's alleged refusal to make a prompt and reasonable offer of settlement on the plaintiff's underinsurance claim pursuant to her motor vehicle insurance policy and instead forced her to proceed to arbitration, the judge erred in granting summary judgment in favor of the defendant insurance company on the basis of principles of res judicata, where the plaintiff was not required to include in a prior complaint for arbitration as mandated by G. L. c. 175, § 111D, claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair claim and settlement practices in violation of G. L. c. 93A, § 9, and G. L. c. 176D, § 3(9)(*f*), (*g*). [193-196]

CIVIL ACTION commenced in the Superior Court Department on August 24, 1999.

The case was heard by *Leila R. Kern,* J., on a motion for summary judgment.

*Daniel J. Harrington* for the plaintiff.

*Richard L. Neumeier* for the defendant.

PERRETTA, J. This appeal presents the question whether principles of res judicata entitle Commercial Union Insurance Company (Commercial) to summary judgment on Cora Beals's complaint seeking compensatory damages and counsel fees on the basis of allegations that Commercial had refused to consider

[1]The complaint indicates that the defendant is also known as CGU Insurance Company.

and to pay her underinsurance claim fairly and promptly and instead forced her to proceed to arbitration. A Superior Court judge allowed Commercial's summary judgment motion on the ground that because Beals could have and should have amended her complaint for arbitration to include her present allegations of Commercial's bad faith refusal to settle her underinsurance claim, she was barred from bringing the present action. Because we conclude that Beals was not required to submit her allegations of Commercial's bad faith to the arbitrator deciding her underinsurance claim, we reverse the judgment.

1. *Background.* We set out the chronology of events giving rise to the controversy. On May 19, 1988, Beals was hurt in an automobile accident. Both she and the driver of the car in which she was a passenger were insured by Commercial. Three years later, after submitting records of her medical treatment and substantial expenses to Commercial, undergoing a physical examination by Commercial's doctor, and incurring legal expenses, Beals brought suit against the driver of the vehicle in which she was a passenger. In October, 1992, a "mock" jury trial was held in Superior Court on this action. The jury returned a nonbinding award of $150,000 in favor of Beals. Five months later, in March of 1993, Commercial sent Beals a check in the amount of the limit of the driver's policy, $100,000. Beals accepted the check in settlement of her claim against the driver. In doing so, she reserved her right to make a claim against Commercial for underinsurance benefits under her own policy.

Thereafter, on April 28, 1993, and April 29, 1994, Beals underwent two surgical procedures and incurred additional medical expenses. Her treating physician was of the opinion that these procedures were related to the 1988 accident. In May, 1994, Beals brought a complaint against Commercial pursuant to G. L. c. 175, § 111D, requesting arbitration on her claim for underinsurance benefits.[2]

On August 25, 1995, after numerous settlement discussions

---

[2]General Laws c. 175, § 111D, provides, in part, that when an insured and her motor vehicle liability insurer cannot agree as to the amount of damages due the insured through uninsured motorist coverage, the matter "shall" be determined "by arbitration." By virtue of G. L. c. 175, § 113L(2), where underinsurance benefits exist, they are included for definitional purposes within uninsured motorist coverage.

and a physical examination of Beals by Commercial's physician, who could not "causally relate" her injuries, Commercial offered to settle Beals's underinsurance claim for $15,000, an amount that would leave her $35,000 short in light of the jury's 1992 nonbinding verdict that she was entitled to $150,000 in damages as a result of the 1988 accident.

Although Beals rejected this offer of $15,000, she sought to continue negotiations with Commercial. Commercial, however, refused to do so and stated that it would not meet with her unless she agreed to mediate her claim at the equal expense of both. Beals declined to participate in mediation on the stated basis of the cost involved when considered in the light of her current living expenses as well as the expenses that she had incurred in recovering against the driver.

Trial before the arbitrator began on February 6, 1997. Two months later, on April 7, 1997, the arbitrator awarded Beals $204,000 on account of the 1988 accident, to be offset by the amount that she had previously received from Commercial on its policy with the driver. Nine days later, Commercial forwarded a check to Beals in the amount of $100,000, the limit of her underinsurance policy. The check and the letter accompanying it stated that it was a full and final payment of all of Beals's claims.

On April 24, 1997, Beals wrote to Commercial requesting that she be allowed to cash the check while reserving her rights to seek interest on the award, of about $35,000, and to pursue claims for damages on the basis of Commercial's alleged refusal to make a prompt and reasonable offer of settlement on her underinsurance claim as required by G. L. c. 93A and G. L. c. 176D. It appears from this letter that these issues had been the topic of numerous telephone conversations between the parties' attorneys. In this letter, Beals also offered to settle all claims against Commercial for $135,000, that is, the amount awarded by the arbitrator with interest on that award. Beals also advised Commercial in this letter that should Commercial refuse to accept her offer, then she and Commercial should proceed on her motion to confirm the arbitrator's award. There is nothing in the record before us to indicate Commercial's response, if any, to the letter. We infer from the fact that the arbitrator's

award was confirmed by a Superior Court judge on December 15, 1997, that Commercial refused to respond to the letter or to make an acceptable offer of settlement. In confirming the arbitrator's award, the judge also ordered that Commercial pay interest in the amount of $35,806, that is, interest on the arbitrator's award computed from the date Beals filed her complaint for arbitration on May 18, 1994. Commercial appealed the judgment,[3] and on June 15, 1999, in an unpublished decision we struck the provision for preaward interest but otherwise affirmed the judge's confirmation of the arbitrator's award. See *Beals* v. *Commercial Union Ins. Co.*, 47 Mass. App. Ct. 1104 (1999).

In the meantime, however, on June 8, 1999, that is, a week prior to our decision on Commercial's appeal, Beals's attorney wrote a "formal demand letter" to Commercial pursuant to G. L. c. 93A, § 9(3). In this six-page letter, Beals chronicled the history of her settlement attempts on her underinsurance claim, described those acts by Commercial that she alleged to be in violation of G. L. c. 93A and G. L. c. 176D, § 3(9)(*f*), (*g*), and made an offer of settlement in the amount of $90,000, that is, $85,000 in compensatory damages and $5,000 in attorney's fees. Beals advised Commercial that her claims were based upon the facts that Commercial had failed to make a prompt and fair settlement after its liability had become reasonably clear and, instead, had forced her to litigate her underinsurance claim by offering her $15,000, an amount substantially less than the amount of damages determined first by an advisory jury and then by an arbitrator.

By letter dated July 8, 1999, that is, about three weeks after the date of our decision in *Beals* v. *Commercial Union Ins. Co.*, *supra*, and exactly thirty days after Beals's demand letter, Commercial rejected Beals's demand for settlement. In this letter, Commercial detailed its reasons for its refusal to settle, including the assertion that Beals's letter did not sufficiently "comply

---

[3]See *Murphy* v. *National Union Fire Ins. Co.*, 438 Mass. 529, 532-533 (2003), holding that payment of an arbitrator's award renders moot any appeal from a judgment confirming that award except as to the matter of a judgment to recover interest from the date of the award to the date of payment of the award.

with the requirements" of a demand letter making a claim for relief under G. L. c. 93A, and contended that Commercial's actions were based upon its right to question its liability and the amount of damages sustained.

Beals then brought the complaint now before us on August 24, 1999, alleging breach of contract (her insurance policy), breach of the implied covenant of good faith and fair dealing, and unfair claim and settlement practices in violation of G. L. c. 93A, § 9, and G. L. c. 176D, § 3(9)(f), (g).[4] We refer collectively to her claims as "bad faith claims." Commercial answered the complaint and, about seven months later, sought summary judgment.

On these facts, the judge concluded that because Beals knew of the claims asserted in her present complaint as of August, 1995, she could have and should have amended her 1994 complaint for arbitration to include them prior to the entry of judgment on that earlier complaint. As support for her ruling, the judge cited to the discussion of claim preclusion set out in *Heacock* v. *Heacock*, 402 Mass. 21, 23-24 (1988).

2. *Discussion.* Claim preclusion, often considered "true" res judicata, is not to be confused with issue preclusion, also known as collateral estoppel. See *Salem* v. *Massachusetts Commn. Against Discrimination*, 44 Mass. App. Ct. 627, 637 (1998); *Green* v. *Brookline*, 53 Mass. App. Ct. 120, 123 n.5 (2001). As explained in *Heacock* v. *Heacock*, 402 Mass. at 23, the "doctrine of claim preclusion makes a valid, final judgment conclusive on the parties . . . and bars further litigation of all matters that were or should have been adjudicated in the action." The doctrine of claim preclusion is applicable to arbitration proceedings. See *Blanchette* v. *School Comm. of Westwood*, 427 Mass. 176, 179-181 (1998). Not only are claims resolved in litigation or arbitration precluded from subsequent litigation, so too are those which could or should have been presented in the first proceeding. See *id.* at 179 n.3, and cases therein cited; *O'Neill* v. *City Manager of Cambridge*, 428 Mass. 257, 259

---

[4]As stated in *Murphy* v. *National Union Fire Ins. Co.*, 438 Mass. at 531 n.5: "Any person whose rights have been affected by an insurance practice that violates G. L. c. 176D, § 3(9), may sue under G. L. c. 93A."

(1998). Both Beals and Commercial correctly make their arguments in terms of "claim preclusion."

As the party moving for summary judgment, Commercial had the burden of establishing the three elements of claim preclusion as set out in *DaLuz* v. *Department of Correction*, 434 Mass. 40, 44-45 (2001):

> " ' "When arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has." *Bailey* v. *Metropolitan Property & Liab. Ins. Co.*, 24 Mass. App. Ct. 34, 36-37 (1987), quoting Restatement (Second) of Judgments § 84 comment c (1982).' *Miles* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 424, 427 (1992). Three elements are essential for invocation of claim preclusion: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits. *Franklin* v. *North Weymouth Coop. Bank*, 283 Mass. 275, 280 (1933)."

For purposes of decision, we assume without deciding that the judge was correct in ruling that Beals indisputably knew of the facts asserted in the action now before us as of August, 1995, and, therefore, could have moved to amend her 1994 complaint for arbitration to include claims based on those facts. Proceeding on that assumption, we focus on the question whether Beals is precluded from proceeding on her present complaint because of her failure to amend her original complaint (for arbitration) to put her bad faith claims before the Superior Court.

Although G. L. c. 175, § 111D, required Beals to submit her original underinsurance claim to an arbitrator, see note 2, *supra*, that statutory mandate is narrow in scope and inapplicable to Beals's bad faith claims. See *Aetna Cas. & Sur. Co.* v. *Poirier*, 371 Mass. 257, 259-260 (1976). Commercial does not argue otherwise.

Instead, Commercial contends that because Beals's bad faith claims arose out of the substantially same transaction as that put before the arbitrator under § 111D, her failure to amend her 1994 complaint to include those claims precludes her from

subsequently raising them. See *Porn* v. *National Grange Mut. Ins. Co.*, 93 F.3d 31, 37 (1st Cir. 1996) (applying "transactional" approach set out in Restatement [Second] of Judgments § 24 [1982], for purposes of defining cause of action consistent with Federal res judicata principles). See also *Saint Louis* v. *Baystate Med. Center, Inc.*, 30 Mass. App. Ct. 393, 399 (1991) ("A claim is the same for res judicata purposes if it is derived from the same transaction or series of connected transactions"); *TLT Constr. Corp.* v. *A. Anthony Tappe & Assocs.*, 48 Mass. App. Ct. 1, 8 (1999) (claims essentially same notwithstanding difference in "nomenclature" given in prior arbitration and current litigation).

To accept Commercial's argument would be to hold that a consumer could be forced to arbitrate a c. 93A claim arising out of a transaction subject to arbitration. But see *Hannon* v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 826 (1982) (consumer need not submit c. 93A claim to arbitration as precondition to assertion of rights under that statute). There is nothing in the *Porn, Saint Louis*, or *TLT Constr. Corp.* opinions that contradicts *Hannon* or otherwise holds that a person can be forced to arbitrate a claim brought under G. L. c. 93A, § 9.

That is not to say that Beals could not have agreed to submit her bad faith claims to the arbitrator. In *TLT Constr. Corp.*, *supra* at 13, we concluded that because there was nothing in the record to show either that the parties were bound by contract or had intended to include c. 93A claims in the mandated arbitration proceedings arising out of disputes under the contract, the c. 93A claims were not barred by principles of res judicata. Contrast *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 666-667 (2002) (arbitration clause in contract sufficiently broad as to include claims under c. 93A); *Gargano & Assocs., P.C.* v. *John Swider & Assocs.*, 55 Mass. App. Ct. 256, 260-262 (2002) (election to submit G. L. c. 93A claim to arbitration precluded subsequent pursuit of that claim).

There is, however, nothing in the record before us that shows that Beals intended to arbitrate her bad faith claims along with her underinsurance claim or that her allegations of Commercial's bad faith settlement practices were heard and determined by the arbitrator. Moreover, precedent does not suggest that it is

unusual for a plaintiff to file an action based upon allegations of bad faith violations separate and apart from a successfully arbitrated insurance claim. See, e.g., *Bonofiglio* v. *Commercial Union Ins. Co.*, 411 Mass. 31, 32-33 (1991); *Murphy* v. *National Union Fire Ins. Co.*, 438 Mass. 529, 530-531 & n.5 (2003). Cf. *Clegg* v. *Butler*, 424 Mass. 413, 416 (1997).

On the record before us and for the reasons set out in *Hannon* v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. at 826, as discussed and applied in *Simas* v. *House of Cabinets, Inc.*, 53 Mass. App. Ct. 131, 137-138 & n.8 (2001), and *Gargano & Assocs., P.C.* v. *John Swider & Assocs.*, 55 Mass. App. Ct. at 260-262, we conclude that Beals did not have to include her bad faith claims in her complaint for the arbitration mandated by G. L. c. 175, § 111D. Her decision not to do so does not preclude her from pursuing those allegations on her present complaint. Consequently, Commercial was not entitled to summary judgment on the basis of principles of res judicata.

*Judgment reversed.*