Billings, Thomas P., J.
The plaintiffs (the “builders”) are home builders; the defendants (the “homeowners”), former clients. There has already been an arbitration hearing and award on the plaintiffs’ claim for *3 compensation due under the contract. The issue presented in this case concerns a second demand for arbitration, this time by the defendant homeowners, who are seeking damages for alleged defects in the construction. The plaintiffs seek a declaratory judgment that the new claims are, in whole or in part, precluded by the prior arbitration and award.
For the reasons that follow, judgment shall enter declaring the rights of the parties, as set out in the Order below.
FINDINGS OF FACT
Based on the credible evidence and the reasonable inferences therefrom, and accepting as fact certain stipulations recorded as paragraphs 1-7 at pp. 1-2 of the Joint Pretrial Memorandum, I find the following facts.
1. Stephen Hir and William Willhoite are contractors. Joanne Kaye and Sheri Foreman are homeowners whose Lexington home was accidentally destroyed by fire. In the spring of 2003, therefore, they contracted with Hir and Willhoite to construct a new home on the same lot, using drawings and specifications drawn up by their architect, Eva Kasell.
2. The written contract, titled “Agreement for Design and Construction,” was signed by both parties on April 8, 2003. Substantial completion was to occur no later than thirty-one weeks from the issuance of all necessary permits. The price of $408,000.00 plus $35,000 in owners’ allowances for specified items was payable in installments tied to specified construction milestones.
3. In Article XV, the contract contained an arbitration clause:
If a dispute arises between the parties relating to or arising out of any provisions of this Agreement or any breach or alleged breach of this Agreement, either parly may request arbitration. Either party may invoke the dispute resolution procedure of this clause by giving written notice to the other. The notice should include a brief description of the disagreement. An arbitrator will be promptly selected by mutual consent of the parties from the Commercial Division of the American Arbitration Association, and any such Arbitration shall take place in Boston, Massachusetts or such closer location to the Project Site as may be available from AAA. The parties agree to participate in good faith in the arbitration to conclusion. The cost of arbitration, including fees and expenses, shall be borne equally by the parties.
4. Such a dispute arose in early 2004. The Town had issued a Certificate of Occupancy on or about January 30,2004; the homeowners had moved in; and the builders asserted that the next progress payment was due. The homeowners, pointing to substantial uncompleted work, disagreed.[1]
5. On February 4, 2004 the builders ceased work. Further discussions with the homeowners resulted in a partial payment of $20,000,[2] but the parties still could not agree on how to finish the project: the homeowners, now that they, their two children, and their belongings and furnishings were moved in, wanted advance notice of any further work, preferred that it be done on weekends, and asked that all keys to the house be returned. The builders felt that a weekend schedule was unrealistic, and unfair to their subcontractors, and were unable to account for the outstanding keys to the homeowners’ satisfaction.
6. The homeowners changed the locks. Thereafter, the builders came by one day when the homeowners were not home, let themselves in through an open door, collected their supplies and equipment, and took video footage to document their claim for compensation.
7. The Rubicon had now been crossed, by both sides. The homeowners did not thereafter ask the builders, and the builders did not offer, to correct or complete any work, except once when the homeowners discovered, as the weather got warm, that the air conditioning didn’t work. (The builders put them in touch with the HVAC subcontractor, but he would not deal with them because he understood the proj ect was in litigation. The homeowners got someone else to come and charge the air conditioner.)
8. The builders served the homeowners with a Demand for Arbitration dated March 1,2004, claiming $64,686.00 as the full amount unpaid on the contract price. By the time of the arbitration hearing in September, the parties had stipulated that the unpaid balance of the contract price was $56,626.00.
9. The homeowners asserted no counterclaims, but defended the arbitration on the ground that some or all of the work for which the builders claimed payment was uncompleted.
10. The arbitration hearing extended over two days about a week apart, concluding on September 22, 2004. On November 18 the arbitrator, James W. Savage, issued his decision, awarding the builders the sum of $33,519.73. This he arrived at as follows (quoting from the one-page Award):
Stipulated Balance of Contract $56,626.00
For the Respondents (homeowners) to complete:
1. Landscaping 9,180.00
2. Irrigation 1,425.00
3. Painting 1,000.00
4. Carpentry 5,612.31
5. HVAC 548.35
6. Plumbing 690.61
7. Electrical 900.00
8. Credit: Custom Media Cabinet Work 450.00
9. Credit: Kitchen Tile Backsplash Work 300.00
10. R&RMiscellaneous Ext. & Int. Work 3.000.00
Total $23,106.27
The $23,106.27 in credits due the homeowners, subtracted from the $56,626.00 contract balance, meant that $33,519.73 was due the builders.
*4 11. The Award (as is customary) provides no further guidance as to what issues were litigated, what facts the Arbitrator found, and what deficiencies resulted in the credits to the Homeowners. Nor is there a transcript or other record of the hearings. From the Arbitrator’s reference to items “to complete,” however, and also from the testimony received in the jury-waived trial before me, I believe, and therefore find, that the credits in the Arbitrator’s award were for uncompleted items, not for correction of construction defects (with the one possible exception of the extra irrigation required due to the foundation mislocation; see below).
12. Taking judicial notice of the dockets of this Court, I find that the homeowners have paid the arbitration award.
13. The homeowners allege various defects in the construction, at least some of which have manifested themselves after the builders commenced their arbitration proceeding and, in some cases, after the hearing and award. The alleged defects are as follows.
14. Leaking Roof. Water has entered the roof and caused yellow stains around two ceiling light fixtures in the master bedroom. The staining first became apparent in January or February of 2005.
15. Plaster “boils” andpeeling. The interior walls are' plastered, not sheetrocked. In areas in the living room, up the stairway to the second floor, and down into the basement, there are boil-like protrusions where the plaster is pulling away from the lath; there are also areas of peeling in the living room corners by the ceiling. (Ms. Kaye believes the problem lies in the builders’ use of nails rather than screws in some aspect of the wall finish work, but I confess I did not get a very clear idea of what the cause might be, and there was no expert testimony concerning it.) At the time of the arbitration proceeding there were “punch list” items involving finish work around electrical outlets and such, nicks and abrasions, and some cracks in some of the plaster walls — some of which, at least, were litigated in the arbitration and none of which are part of the homeowners’ current arbitration demand— but the “boils” and peeling did not develop until after the arbitration hearing had been completed.
16. Drainage System on Right Side, and Associated Landscaping. The house is designed so that roof gutters in front feed into downspouts, which direct runoff away from the foundation and into a gravel-filled ditch (I assume, through a length of perforated pipe, but the evidence did not describe this). On one of the two days of arbitration hearings it was raining heavily, and the homeowners noticed water bubbling up out of the ground on the right near the foundation. Eventually, a carpenter cut a hole in the mahogany deck in this area and discovered that the downspout did not connect to the perforated pipe. The homeowners went to that day’s arbitration hearing upset over this new problem and mentioned it to their attorney, but were not allowed (I infer, because the arbitrator made a ruling) the issue because they had not asserted any counterclaims. Since the arbitration hearing, the homeowners retained Clifford Construction to overhaul the drainage system (including re-pitching the gutters and re-grading the in-ground portion to correct allegedly defective work by the builders), and Keltic Landscaping to repair and replace the landscaping that was disturbed in the corrective work.
17. Three Misbehaving Electrical Circuits. A light in a shower, a porch light, and the washing machine all flick off, then back on, for no apparent reason. There was no evidence as to when the homeowners first noticed this problem. It is distinct, however, from the homeowners’ setoff for uncompleted electrical work, which included ceiling fans in the master bedroom and a garbage disposal and other items in the kitchen that were not hooked up.
18. Humidifier. The homeowners’ son has allergies, so they included a humidifier in the house plans. This was installed in the attic, which they have since been advised was an inappropriate location because it may freeze. There was no evidence as to when or how the homeowners discovered that the attic location was inappropriate.
19. Lawn Sprinkler System. Due to an error by the builders or a subcontractor, the foundation was poured six feet back of where it had been designed. This meant more lawn to irrigate, and commensurately greater cost for piping, sprinkler heads, and labor. This claim, however, was clearly ripe by the time the arbitration proceeding was commenced; the homeowners had to get additional sign-offs from the Town of Lexington for the revised location, before the Certificate of Occupancy could issue. It may be that the full cost of the sprinkler system is included in the $1,425.00 award under the “Irrigation” line item, or perhaps the arbitrator heard and rejected this aspect of a claimed setoff, or it may be that the additional cost for the larger-sized irrigation system was not presented in the first arbitration; but it could have been.
CONCLUSIONS OF LAW
The plaintiffs’ challenge to the defendants’ arbitration demand is based on the doctrine of claim preclusion.
The doctrine of claim preclusion makes avalid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been adjudicated in the action. This is so even though the claimant is prepared in a second action to present different evidence or legal theories to support his claim, or seeks different remedies.
Heacock v. Heacock, 402 Mass. 21, 23 (1988).
Moreover:
The doctrine of claim preclusion is applicable to arbitration proceedings. See Blanchette v. School *5 Comm. of Westwood, 427 Mass. 176, 179-81 (1998). Not only are claims resolved in litigation or arbitration precluded from subsequent litigation, so too are those which could or should have been presented in the first proceeding. See id. at 179, and cases therein cited; O’Neill v. City Manager of Cambridge, 428 Mass. 257, 259 (1998).
Beals v. Commercial Union Ins. Co., 61 Mass.App.Ct. 189, 193-94 (2004); see TLT Constr. Corp. v. A. Anthony Tappe & Assocs., Inc., 48 Mass.App.Ct. 1, 9 (1999) (“An arbitration award has the [same] requisite finality for res judicata purposes because it can be ‘enforced as any other judgment or decree’ ”) (citation omitted).[3]
The oft-repeated phrase, “could or should have been presented,” should not be taken too literally: simply because a claim “could” have been added to an earlier proceeding under liberal joinder rules does not mean that it is precluded in a later one. Rather, claim preclusion bars only “further proceedings between the same parties on the same claim” as was previously litigated to a judgment. Wright Mach. Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 688 (1974); see Heacock, 402 Mass. at 23 n.2 (“ ‘Claim preclusion’ is the modern term for the doctrines traditionally known as ‘merger’ and ‘bar,’ and prohibits the maintenance of an action based on the same claim that was the subject of an earlier action between the same parties or their privies”). “A claim is the same for [claim preclusion] purposes if it is derived from the same transaction or series of connected transactions.” TLT Constr. Corp. v. A. Anthony Tappe & Assocs., Inc., 48 Mass.App.Ct. 1, 8 (1999) (citations omitted).
Related but distinct considerations come into play where the claim sought to be precluded is one that might have been, but was not, asserted as a counterclaim in the first proceeding. Sometimes such a claim is barred in a second proceeding because it was a compulsory counterclaim in the earlier proceeding, obviating any need to examine claim preclusion principles. See Mancuso v. Kinchla, 60 Mass.App.Ct. 558, 563-64 (2004).
Unlike the Massachusetts and Federal Rules of Civil Procedure (Rule 13(a)), however, the AAA’s Construction Industry Arbitration Rules under which the arbitration in this case was conducted (see Ex. 6), while expressly permitting counterclaims, nowhere suggest that any counterclaim is ever compulsory, or that the failure to assert a counterclaim may have preclusive effect in a later proceeding. The claims the homeowners now wish to arbitrate, therefore, were not compulsory counterclaims in the builders’ arbitration.
The parties’ contract, moreover, provided (at Art. XV, p. 12) that “[e]ither party may invoke the dispute resolution procedure of this clause.” (Emphasis supplied.) The permissive language of this clause stands in stark contrast to the more usual, mandatory language,[4] suggesting that the parties did not intend that one party’s election to arbitrate its affirmative claims should bind the other parly to arbitrate its counterclaims, in the same proceeding or at all.
How, then, to reconcile the apparently permissive nature of the arbitration clause and the AAA Rules, as applied to counterclaims, with the parties’ and the public’s undoubted interest in ensuring that arbitration awards will be final, binding, and unimpeachable?The Restatement (Second) of Judgments, section 22, provides as follows:
§22. Effect of Failure to Interpose Counterclaim
(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).
(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
(b) The relationship between the counterclaim and the plaintiffs claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.
Section 22 has been cited approvingly in Massachusetts appellate cases; see Mancuso, 60 Mass.App.Ct. at 563; Yentile v. Howland, 26 Mass.App.Ct. 214, 216 (1988); and has been applied, in cases from other jurisdictions, to resolve the issue of omitted counterclaims in arbitration proceedings. See International Ambassador Programs v. Archexpo, 68 F.3d 337, 338, 340, 341 (9th Cir. 1995), cert. denied, 517 U.S. 1167 (1996); U.S. ex rel. Treat Bros. Co. v. Fidelity & Deposit Co. of Maryland, 986 F.2d 1110, 1114 (7th Cir. 1993); Rudell v. Comprehensive Accounting Corp., 802 F.2d 926, 928 (7th Cir. 1986), cert. denied, 480 U.S. 907 (1987); Maryland Transit Admin. v. National R.R. Passenger Corp., 372 F.Sup.2d 478, 487 (D.Md. 1995); Andrews v. Wade and De Young, Inc., P.C., 950 P.2d 574, 577-79 (Alaska 1997).
Section 22 seems a sensible accommodation of the interests involved, and is consistent in both letter and spirit with Massachusetts law. See, e.g., Gloucester Marine Railways Corp. v. Charles Parisi, Inc., 36 Mass.App.Ct. 386, 391 (1994) (“Since claim preclusion is grounded upon considerations of fairness and efficient judicial administration, the doctrine is not applied rigidly where such interests would not be served”). I therefore accept it as the law of Massachusetts, and rule that because the homeowners’ claims were not compulsory counterclaims in the first arbitration, they are barred if, but only if, their successful prosecution in the second proceeding would nullify the *6 first arbitrator’s award or would impair rights established in it.
Turning, then, to the specific claims which the homeowners seek to arbitrate: the arbitrator awarded the builders compensation under the contract for work they had performed. In so doing, he began with the unpaid balance of the contract price, and set off against it the value of work the builders had not completed.
The arbitrator was not, however, presented with any claim that the work the builders had done was defective, just that they had not completed all of the work required under the contract. Indeed, at least two of the alleged construction defects (the leaking roof and the plaster boils and peeling) were unknown, and not reasonably discoverable, until after the arbitration had been completed, and a third (the right-side drainage system) was only discovered the morning of the first day of hearings.[5] It is hard to see how these claims “should,” or even “could,” have been adjudicated in the first arbitration. Finally, none of these three claims bears such a relationship to the builders’ arbitrated claim for compensation “that successful prosecution of the second [arbitration] would nullify the initial judgment or would impair rights established in the initial [arbitration].” They may therefore go forward in. the second arbitration.
The misbehaving electrical circuits and the misplaced humidifier may or may not have been known or discoverable before the arbitration commenced— the evidence did not resolve this question one way or the other — but these issues, too, are distinct from the builders’ claim for compensation, and have no potential to nullify the arbitrator’s award or impair rights established by it. These claims, too, may therefore be pursued in the second arbitration.
The homeowners’ final claim — that the builders’ error in placing the foundation resulted in a larger lawn and sprinkling system, and thus cost them extra for sprinkler heads, piping, etc. — does intrude on the arbitrator’s award, and specifically the $1,425.00 set-off for the uncompleted irrigation system. The claim was ripe by the time the first arbitration was commenced. On the evidence before me, I am unable to determine whether the arbitrator took the larger lawn into account in arriving at the $ 1,425 figure, or instead (as seems more likely) went strictly by contract values rather than cost to complete. In any event, this issue could and should have been presented and decided in the first arbitration, and to re-litigate it in the second proceeding would be to attack collaterally the first award. The homeowners therefore may not pursue their lawn sprinkler system claim in the second arbitration.
ORDER FOR JUDGMENT
The Court declares the rights of the parties as follows.
1. The homeowners’ claims relating to the leaking roof, the plaster boils and peeling, the right-side drainage system and associated landscaping, the three misbehaving electrical circuits, and the attic humidifier are separate and distinct from the matters litigated and adjudicated in the first arbitration, and have no potential to nullify the arbitrator’s award or impair rights established by it. They therefore are not barred by the doctrine of claim preclusion in the homeowners’ arbitration.
2. The claim for extra expense in the lawn sprinkler system due to the foundation mislocation, however, impinges on the arbitrator’s award, and so is barred in the homeowners’ arbitration.
3. Nothing herein should be taken as making any findings, or expressing any view, as to the merits of any of the clams sought to be arbitrated; this is exclusively a matter for the arbitrator.

The homeowners knew when they moved in that substantial work still needed to be done, but the job had already gone well past the scheduled completion date (in part because the builders had poured the foundation in the wrong location: see below), and they wanted to stop paying rent in their temporary quarters. (Here and elsewhere, references to work by the “builders” include work by subcontractors.)

The homeowners refused to pay more until they received Waivers of Lien from the project’s subcontractors. The builders produced these, but not until September, on the first day of the arbitration hearing.

In Louison v. Fischman, 341 Mass. 309, 313-14 (1960), the court (with numerous citations to nineteenth-century cases involving arbitrators and referees) stated: “Although the award bars subsequent action on any matter specifically decided, it does not foreclose consideration of a question which might have been decided but was not. The award, however, is prima facie evidence that any matter which could have been adjudicated was in fact decided and the burden is upon the party seeking to avoid the effect of the award to show otherwise.” By the late 1990s at least, however, this approach had given way to the broader, “could or should have been presented” rubric of contemporary issue preclusion doctrine, placing arbitration awards on the same footing as court judgments and administrative agency adjudications.

For example, the AAA Construction Industry Arbitration Rules include the following suggested clause:
Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. (Emphasis supplied.)

Under Rule R-6 of the AAA Construction Industry Arbitration Rules, a new claim or counterclaim must be submitted in writing, the other side has ten days to answer, and once the arbitrator is appointed, the claimant must secure his consent to the new claim. Had the homeowners elected to pursue this route, in other words, it would have delayed and disrupted the hearings, and leave of the arbitrator might not have been forthcoming.
As one commentator has observed (albeit in the context of claims in judicial proceedings, not counterclaims in arbitra-tions): “Most cases rule that an action need only include the portions of the claim due at the time of commencing that action, frequently observing that the opportunity to file a *7 supplemental complaint is not an obligation . . . Substantial disruption could result from forced amendment at any time after significant discovery has been accomplished, and it is hard to justify any test relating to the progress of discovery or other pretrial events so clear that plaintiffs could afford to apply it without seeking explicit judicial guidance.” 18 C. Wright & A. Miller et al., Federal Practice and Procedure §4409 at 213-19 (2d ed. 2002). The majority and better-considered rule, therefore, is that in determining whether a claim was sufficiently ripe that it should have been asserted in an earlier proceeding, a court should look at how matters stood as of the commencement of the prior proceeding, not some later date. Id. and cases cited at nn. 9-16.